STAFFORD, U. S. ATTORNEY, ET AL. *v.* BRIGGS ET AL.

No. 77–1546.   Argued April 24, 1979—Reargued November 7, 1979—
Decided February 20, 1980*

*Together with No. 78–303, *Colby, Director, Central Intelligence Agency, et al.* v. *Driver et al.,* on certiorari to the United States Court of Appeals for the First Circuit.

528

BURGER, C. J., delivered the opinion of the Court, in which BLACKMUN, POWELL, REHNQUIST, and STEVENS, JJ., joined. STEWART, J., filed a dissenting opinion, in which BRENNAN, J., joined, *post*, p. 545. WHITE, J., took no part in the consideration or decision of the cases. MARSHALL, J., took no part in the decision of the cases.

*Peter Megargee Brown* reargued the cause for petitioners in No. 77–1546. With him on the briefs was *Earl H. Nemser.* Mr. Nemser reargued the cause for petitioners in No. 78–303. With him on the briefs was Mr. Brown.

*Doris Peterson* reargued the cause for respondents in No. 77–1546. With her on the briefs were *Morton Stavis, Nancy Stearns, Robert L. Boehm, Cameron Cunningham, Brady Coleman, Jack Levine,* and *Philip Hirschkop. Melvin L. Wulf* reargued the cause for respondents in No. 78–303. With him on the brief were *Leon Friedman* and *Burt Neuborne.*

*Elinor H. Stillman* reargued the cause for the United States as *amicus curiae* urging reversal in No. 78–303. On the brief urging reversal in both cases were *Solicitor General McCree, Assistant Attorney General Babcock, Deputy Solicitor General Easterbrook, Allan A. Ryan, Jr.,* and *Robert E. Kopp.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari in these cases to decide whether the venue provisions contained in § 2 of the Mandamus and Venue Act of 1962, 28 U. S. C. § 1391 (e), apply to actions

for money damages brought against federal officials in their individual capacities. 439 U. S. 1113 (1979).

## I

## No. 77–1546

### *Stafford et al.* v. *Briggs et al.*

In 1972, petitioner William Stafford was United States Attorney and petitioner Stuart Carrouth was an Assistant United States Attorney for the Northern District of Florida. Guy Goodwin was an attorney in the Department of Justice.[1] Together they conducted grand jury proceedings in Florida, inquiring into the possibility that various individuals had conspired and engaged in interstate travel with intent to cause a riot. Respondents were among those subpoenaed to appear. At the request of respondents' counsel, the District Judge responsible for the proceedings called Goodwin to the stand and asked him to state, under oath, whether any of the witnesses represented by respondents' counsel was an agent or informant of the Government. Goodwin replied that none was.

Respondents later brought this suit in the United States District Court for the District of Columbia against Goodwin, Stafford, Carrouth, and petitioner Claude Meadow, an agent for the Federal Bureau of Investigation. Each was sued individually and in his official capacity. Respondents alleged that Goodwin had testified falsely in furtherance of a conspiracy among petitioners and Goodwin to deprive respondents of various statutory and constitutional rights. Each respondent sought a declaratory judgment, $50,000 in compensatory damages, and $100,000 in punitive damages. Petitioners, each of whom resided in Florida, were served by certified mail; Goodwin, whose residence was in the District of Columbia, was served personally.

---

[1] Goodwin is not a party in the case before this Court.

Respondents relied on § 2 of the Mandamus and Venue Act of 1962, which, as amended and codified in Title 28 of the United States Code, provides:

"§ 1391.   Venue generally

.          .          .          .          .

"(e) A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.   Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.

"The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought."

Petitioners requested transfer of the action to the Northern District of Florida, or, alternatively, dismissal for improper venue and insufficiency of process.   The District Court denied the motion to transfer but granted the motion to dismiss, ruling that venue was improper and that the court lacked *in personam* jurisdiction over the petitioners.[2]

---

[2] Goodwin joined petitioners in making the transfer request.   He also moved for dismissal on grounds of prosecutorial immunity.   This motion was denied.   See *Briggs* v. *Goodwin,* 384 F. Supp. 1228 (DC 1974),

Respondents appealed the District Court's order dismissing the case against petitioners, and the Court of Appeals for the District of Columbia Circuit reversed, holding that 28 U. S. C. § 1391 (e) permits damages actions against federal officials to be brought in any district in which any one defendant resides. *Briggs* v. *Goodwin,* 186 U. S. App. D. C. 170, 569 F. 2d 1 (1977). Because Goodwin was a resident of the District of Columbia, venue there was proper. The court also held that there was no constitutional infirmity in the statute as applied. It refused to apply the "minimum contacts" analysis of *International Shoe Co.* v. *Washington,* 326 U. S. 310 (1945), and held that in a case such as this there is no constitutional requirement that defendants have any contacts with the place in which a particular federal court sits before they may be sued in that court.

## No. 78-303

### *Colby et al.* v. *Driver et al.*

From 1953 to 1973 at the International Airport in New York, the Central Intelligence Agency opened and made photographic copies of certain mail traveling between the United States and the Soviet Union.[3]

Petitioner Vernon Walters was appointed Deputy Director of Central Intelligence in 1972; petitioner William Colby was appointed Director of Central Intelligence in 1973. Both petitioners were in office in 1975 when respondents, acting on behalf of themselves and others whose mail had allegedly been opened by the CIA, brought suit in the United States District Court for the District of Rhode Island. Respondents alleged that the interference with their mail to and from the

---

aff'd, 186 U. S. App. D. C. 179, 569 F. 2d 10 (1977), cert. denied, 437 U. S. 904 (1978).

[3] See Senate Select Committee to Study Governmental Operations with respect to Intelligence Activities, Final Report, S. Rep. No. 94-755, Book 3, pp. 559-677 (1976).

Soviet Union violated their constitutional rights. Their suit, brought against both present and former federal officials in their individual and official capacities, requested declaratory, injunctive, and monetary relief, including $20,000 for each letter opened and punitive damages of $100,000 for each member of the plaintiff class.

Petitioners and the other defendants were served outside of Rhode Island by certified mail. All the defendants moved to dismiss the complaint for lack of personal jurisdiction, improper venue, and insufficiency of process, claiming that no defendant resided in or had substantial contacts with Rhode Island and that the complaint failed to allege that any activity had occurred there. The District Court denied these motions but certified the questions involved for an immediate appeal.

The Court of Appeals for the First Circuit affirmed the order of the District Court as to petitioners, who were CIA officials when the complaint was filed, but it reversed as to those defendants who had left their Government positions at the time of filing. *Driver* v. *Helms,* 577 F. 2d 147 (1978).[4] The court held that § 1391 (e) applied to damages actions against federal officials in their individual capacities and provided the mechanism for obtaining personal jurisdiction over them. Venue was proper in Rhode Island because one of the respondents resided there. The court also rejected petitioners' challenge to the constitutionality of the statute, ruling that minimum contacts analysis was not relevant in this situation.

## II

Soon after the passage of the Judiciary Act of 1789, 1 Stat. 73, this Court held that Congress had not granted the federal

---

[4] The court concluded that because 28 U. S. C. § 1391 (e) was drafted in the present tense, Congress did not mean it to apply to former officials. Although respondents sought certiorari on this question, we declined review. 439 U. S. 1114 (1979).

trial courts generally the power to issue writs of mandamus. *McIntire* v. *Wood,* 7 Cranch 504 (1813). The federal courts in the District of Columbia, which derived power to issue the writ from the common law of the State of Maryland, were the sole exception. *Kendall* v. *United States ex rel. Stokes,* 12 Pet. 524 (1838).

To avoid this jurisdictional obstacle, litigants seeking mandamus-type relief outside of the District of Columbia often brought suits for injunctive or declaratory relief instead. But in most cases a superior federal officer was an indispensable party. See, *e. g., Williams* v. *Fanning,* 332 U. S. 490 (1947). Because of the legal fiction that officers of such rank resided only where they were stationed—usually the District of Columbia—effective service could be obtained only there. And with the restrictive venue provisions then in effect, joinder of such an official required that the action be brought in the District of Columbia. See 28 U. S. C. § 1391 (b) (1946 ed., Supp. II), amended in Pub. L. 89–714, 80 Stat. 1111 (1966). The net result was that persons in distant parts of the country claiming injury by reason of the acts or omissions of a federal officer or agency were faced with significant expense and inconvenience in bringing suits for enforcement of claimed rights.

In response to this problem, Congress enacted the Mandamus and Venue Act of 1962. Section 1 of the Act, 28 U. S. C. § 1361, provides that actions in the nature of mandamus can be brought in any district court of the United States.[5] Section 2 of the Act, 28 U. S. C. § 1391 (e), provides a similarly expanded choice of venue and authorizes service by certified mail on federal officers or agencies located outside the district in which such a suit is filed.

---

[5] "§ 1361. Action to compel an officer of the United States to perform his duty

"The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

The 1962 legislation thus makes it more convenient for aggrieved persons to file actions in the nature of mandamus. Respondents argue, however, that much more was intended. They contend that by using the general language "civil action," Congress intended to include in the expanded venue provision not only mandamus-type actions but all civil actions, including those seeking money damages from federal officers as individuals.

The language of § 1391 (e) does refer to "a civil action." Recitation of that fact, however, but begins our inquiry, as this Court noted over a century ago when faced with a similar problem of statutory interpretation:

> "The general words used in the clause . . . taken by themselves, and literally construed, without regard to the object in view, would seem to sanction the claim of the plaintiff. But this mode of expounding a statute has never been adopted by any enlightened tribunal— because it is evident that in many cases it would defeat the object which the Legislature intended to accomplish. And it is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law. . . ." *Brown* v. *Duchesne,* 19 How. 183, 194 (1857).

Looking first to "the whole statute," two things are apparent: (1) § 1 of the Mandamus and Venue Act of 1962 is explicitly limited to "action[s] in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U. S. C. § 1361. (2) The "civil action" referred to in § 2 of the Act is one "in which a defendant *is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority. . . ."* 28 U. S. C. § 1391 (e) (emphasis added). The highlighted lan-

guage, cast by Congress in the present tense, can reasonably be read as describing the character of the defendant at the time of the suit. So read, it limits a covered "civil action" to one against a federal official or agency who is at that time acting—or failing to act—in an official or apparently official way.[6] Such "civil actions" are those referred to in § 1 of the Act, *i. e.,* "action[s] in the nature of mandamus."

Our analysis does not stop with the language of the statute; we must also look to "the objects and policy of the law." *Brown* v. *Duchesne,* 19 How., at 194. In order to "give [the Act] such a construction as will carry into execution the will of the Legislature . . . according to its true intent and meaning," *ibid.,* we turn to the legislative history. *Schlanger* v. *Seamans,* 401 U. S. 487, 490, n. 4 (1971). See also *United States* v. *Culbert,* 435 U. S. 371, 374, n. 4 (1978); *Train* v. *Colorado Public Interest Research Group,* 426 U. S. 1, 9–10 (1976).

### III

H. R. 10089, 86th Cong., 2d Sess. (1960), was a precursor of the bill which eventually became the 1962 Act. Congressman Budge, the author of H. R. 10089, explained its purpose:

> "As it is now, there is no opportunity for a judicial review of the action of any decision that is made by a Federal officer in charge out there [in the field], no matter how arbitrary or capricious, because it is too expensive to come back here [to Washington, D. C.] to litigate it." Hearings on H. R. 10089 before Subcommittee No. 4 of the House Committee on the Judiciary, 86th Cong., 2d Sess., 19–20 (May 26 and June 2, 1960).[7]

---

[6] Congress' use of the language "under color of legal authority" is explained in the House Committee Report as an effort to circumvent the sovereign immunity doctrine. See *infra,* at 538–539.

[7] A certified copy of these unpublished hearings has been lodged with the Clerk of this Court.

As often happens, the dialogue between witnesses, Members, and Committee Counsel reveals considerable initial confusion as to the extent of the problem and the proposed solution. Of course, the very purpose of hearing witnesses is to expose problems, probe for solutions, and reach a consensus. At one point Congressman Poff, in an obvious effort to clarify the responses, asked the Department of Justice witness, Donald MacGuineas:

> "Mr. POFF. Wouldn't you say the author's objective is to give a citizen who has a legitimate complaint against his Government the right to sue his Government at the place where the wrong was committed?
>
> "Mr. MacGUINEAS. The difficulty, if I may say so, Congressman, with your statement, is you speak of the right to sue his Government. Now, that proposition in itself raises very difficult and complicated legal questions which I touched upon at my appearance last week.
>
> "You must first decide whether a particular suit is actually a suit against the man in his official capacity or whether it i[s] a suit against the Government officer in his individual capacity. If it is the latter, it is not in any sense a suit against the Government." *Id.*, at 54.

Committee Counsel later asked the Department of Justice witness:

> "Suppose in order to take care of a body of law which seems to say that when a government official does something wrong he is acting in his individual capacity, we added the following language—'acting in his official capacity or under color of legal authority'?" *Id.*, at 61.

Mr. MacGuineas' response, which must now be recognized as prophetic, was that such language might later be misinterpreted as covering a damages action against a person holding Government office. This, he said, would raise "serious policy questions" by allowing a Government official to be sued in the

plaintiff's home district while a private defendant in the same kind of action could be sued only in the district of his residence. The Chairman, Mr. Forrester, and the ranking senior Committee Member, Mr. Poff, both stated that they shared the same concern. *Id.*, at 62–63.

Judge Albert Maris, then Chairman of the Standing Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, testified that such an "injustice" to the Government officer could be avoided only by requiring a damages suit to be brought in the district of his residence or where the cause of action arose. "That," said Judge Maris, "is the normal procedure in the law. That is what ordinarily happens in the ordinary law suit." *Id.*, at 86. Congressman Dowdy, one of the four Members present, then said:

> "Speaking to the point you were talking about, I don't understand that we have in consideration suits for money damages. That would be maybe where a person is being sued as an individual." *Id.*, at 87.

When Judge Maris stated his view that cases involving money damages would not be involved, Mr. Dowdy agreed: "They would not be covered by this [proposed legislation]." *Ibid.*

Finally, near the conclusion of the hearing, the bill's author, Mr. Budge, stated:

> "We always get off into these slander type actions which is not what I am seeking at all. When Mr. MacGuineas stated here this morning that he was not sure of the purpose of the legislation, I think that is perhaps true, because *I have no intention of bringing* [within this bill] *tort actions against individual government employees.* All I am seeking to do is to have the review of their official actions take place in the United States District Court where the determination was made." *Id.*, at 102 (emphasis added).

Following the hearings, the Subcommittee redrafted H. R. 10089. The revised version, H. R. 12622, 86th Cong., 2d

Sess. (1960), among other things, added the language "or under color of legal authority" to the phrase "acting in his official capacity." Far from being intended as the master key which would unlock the door to nationwide venue for money damages actions brought against an official as an individual, this language was specifically intended only to alleviate the hardships caused by a relatively narrow but nagging problem, as the Committee Report made clear:

"By including the officer or employee, both in his official capacity and acting under color of legal authority, the committee intends to make the proposed section 1391 (e) applicable not only to those cases where an action may be brought against an officer or employee in his official capacity. It intends to include also those cases where the action is nominally brought against the officer in his individual capacity even though he was acting within the apparent scope of his authority and not as a private citizen. *Such actions are also in essence against the United States but are brought against the officer or employee as an individual only to circumvent what remains of the doctrine of sovereign immunity.* The considerations of policy which demand that an action against an official may be brought locally rather than in the District of Columbia require similar venue provisions where the action is based upon the fiction that the officer is acting as an individual. There is no intention, however, to alter the venue requirements of Federal law insofar as suits resulting from the official's private actions are concerned." H. R. Rep. No. 1936, 86th Cong., 2d Sess., 3–4 (1960) (emphasis added).

The Committee's statement of the legislation's purpose also sheds considerable light on the congressional intent:

"The purpose of this bill is to make it possible to bring actions against Government officials and agencies in U. S. district courts outside the District of Columbia, *which,*

*because of certain existing limitations on jurisdiction and venue, may now be brought only in the U. S. District Court for the District of Columbia."* *Id.,* at 1 (emphasis added).

In context, this clearly confines the intended thrust of § 1391 (e) to mandamus-type actions. See *supra,* at 533–534. The Report continues:

"Section 2 [§ 1391 (e)] is the venue section of the bill. Its purpose is similar to that of section 1. It is designed to permit an action *which is essentially against the United States* to be brought locally rather than requiring that it be brought in the District of Columbia simply because Washington is the official residence of the officer or agency sued." H. R. Rep. No. 1936, *supra,* at 2 (emphasis added).[8]

Although H. R. 12622 passed the House in 1960, the Senate adjourned without acting on it. See H. R. Rep. No. 536, 87th Cong., 1st Sess., 1 (1961). The same bill was reintroduced in the next Congress as H. R. 1960, 87th Cong., 1st Sess. (1961). The Committee Report was republished as H. R. Rep. No. 536, 87th Cong., 1st Sess. (1961), and the bill was referred to the Senate.

The Senate Judiciary Committee also solicited comments on the bill from the Department of Justice. The Department suggested, *inter alia,* that it would be prudent to effect the

---

[8] Respondents' argument that § 1391 (e) should apply to personal damages actions is based on an isolated passage in the Committee Report:

"The venue problem also arises in an action against a Government official seeking damages from him for actions which are claimed to be without legal authority but which were taken by the official in the course of performing his duty." H. R. Rep. No. 1936, at 3.

In the face of the consistently expressed intent of the Committee to include only actions essentially against the Government, we decline to treat this one cryptic sentence as dispositive of the legislative intent. See *Blackburn* v. *Goodwin,* 608 F. 2d 919 (CA2 1979).

venue reform by amending the Administrative Procedure Act so that "suits for money judgments against officers" would be "unquestionably eliminate[d]." See Letter from Deputy Attorney General White to Senator Eastland (Feb. 28, 1962), reprinted in S. Rep. No. 1992, 87th Cong., 2d Sess., 6 (1962). Although the Senate Committee in its Report commented on other suggestions proffered by the Justice Department, in this instance it made no response at all.[9] Respondents and the Courts of Appeals rely on this failure to respond as indicating an intention that the venue provisions were to apply to actions for money damages brought against a federal official in his individual capacity.

We are not persuaded by this negative inference. Several passages affirmatively state the limited nature of the bill: The Senate Committee's statement of the bill's purpose is exactly the same as that found in the House Report. Compare S. Rep. No. 1992, *supra,* at 2, with H. R. Rep. No. 536, *supra,* at 1. The Committee also states that "[t]he bill, as amended, is intended to facilitate review by the Federal courts of *administrative* actions," S. Rep. No. 1992, *supra,* at 2 (emphasis added), which does not afford a basis for reading the language of the statute to include money damages actions against individuals. And the following comment as to the bill's venue provisions appears in the Report:

> "The committee is of the view that the current state of the law respecting venue in actions against Government officials is contrary to the sound and equitable administration of justice. Frequently, the administrative determinations involved are made not in Washington

---

[9] The only arguable reference is a passage taken verbatim from the House Report which mentions that the venue problem also arises in suits against officials for damages for acts taken in the course of performing official duties. See S. Rep. No. 1992, at 3. Inasmuch as this passage, like much of the Senate Report, is but a recitation of language used earlier in the House Report, see n. 8, *supra,* it obviously was not drafted in response to the Justice Department's letter.

but in the field. In either event, these are actions *which are in essence against the United States*. The Government official is defended by the Department of Justice whether the action is brought in the District of Columbia or in any other district. U. S. attorneys are present in every judicial district. Requiring the Government to defend Government officials and agencies in places other than Washington would not appear to be a burdensome imposition." S. Rep. No. 1992, *supra,* at 3 (emphasis added).

Here again is confirmation that there was no thought to expand the venue provisions except as to actions "in essence against the United States," since the Government is not "required" to defend personal actions in which a Government employee is a defendant.

What emerges is that the bill's author, the Committees, and the Congress intended nothing more than to provide nation-wide venue for the convenience of individual plaintiffs in actions which are nominally against an individual officer but are in reality against the Government. A suit for money damages which must be paid out of the pocket of the private individual who happens to be—or formerly was—employed by the Federal Government plainly is not one "essentially against the United States," and thus is not encompassed by the venue provisions of § 1391 (e).[10]

This is not the first time an overbroad interpretation of § 1391 (e) has been rejected by this Court. In *Schlanger* v. *Seamans,* 401 U. S. 487 (1971), the question was whether in a habeas corpus proceeding "any custodian, or one in the chain of command, as well as the person detained, must be

---

[10] In deciding whether an action is in reality one against the Government, the identity of the named parties defendant is not controlling; the dispositive inquiry is "who will pay the judgment?" See *Larson* v. *Domestic & Foreign Commerce Corp.,* 337 U. S. 682 (1949). Here, it is against individuals and not against the Government that a money judgment is sought.

in the territorial jurisdiction of the District Court." *Id.,* at 489. While recognizing that habeas corpus is "a civil action," we noted that reference to § 1391 (e) did not provide the answer. In the opinion for the Court, Mr. Justice Douglas stated:

> "Although by 28 U. S. C. § 1391 (e) . . . Congress has provided for nationwide service of process in a 'civil action in which each defendant is an officer or employee of the United States,' the legislative history of that section is barren of any indication that Congress extended habeas corpus jurisdiction. *That section was enacted to broaden the venue of civil actions which could previously have been brought only in the District of Columbia.* See H. R. Rep. No. 536, 87th Cong., 1st Sess., 1; S. Rep. No. 1992, 87th Cong., 2d Sess., 2." 401 U. S., at 490, n. 4. (Emphasis added.)

As we have noted, the "civil actions which could previously have been brought only in the District of Columbia" were suits for mandamus, not actions for money damages. See *supra,* at 533–534. The clear purport of our statement in *Schlanger* is that Congress did not intend the phrase "civil action" to be given the sweeping definition argued for it in that case, and that the Court was required to turn to the legislative history to determine which "civil actions" § 1391 (e) governed.

## IV

The conclusion derived from the legislative history that § 1391 (e) does not cover the type of suits here at issue is buttressed by consideration of the consequences of the broad interpretation urged upon us by respondents. The conditions and venue provisions under which officers of the United States may be sued, while in office or after leaving office, have serious implications for defendants as well as for those seeking relief. An officer of the Government while so employed may have numerous mandamus-type suits naming him or her as a party.

Without doubt, under § 1391 (e), venue lies in every one of the 95 federal districts, and suits may be pending in a dozen or several dozen at any one time. Even though the burden of defending multiple suits while in office may be onerous, the United States Attorney in each of the districts and the Department of Justice carry that burden. In a mandamus suit only rarely would the officer himself be obliged to travel to the district in which the case was heard; if so obliged, the travel would be at Government expense. When an official leaves office, his personal involvement in a mandamus suit effectively ends and his successor carries on. No personal cost or inconvenience is incurred, either while in office or later. It was with this understanding that Congress sought to ameliorate the inconvenience and expense to private plaintiffs seeking relief from the action or inaction of their Government. H. R. Rep. No. 536, at 3; S. Rep. No. 1992, at 3.

Suits for money damages for which an individual office-holder may be found personally liable are quite different. If § 1391 (e) were construed to govern actions for money damages against federal officers individually, suits could be brought against these federal officers while in Government service—and could be pressed even after the official has left federal service—in any one of the 95 federal districts covering the 50 states and other areas within federal jurisdiction. This would place federal officers, solely by reason of their Government service, in a very different posture in personal damages suits from that of all other persons, since under 28 U. S. C. § 1391 (b), suits against private persons for money damages must be brought "in the judicial district where all defendants reside, or in which the claim arose." [11]

[11] Under this provision the case against petitioner Stafford could have been brought only in the Northern District of Florida where the alleged claim arose. As to petitioner Colby, the proper venue would have been the Eastern District of New York where the alleged claim arose, or perhaps the Eastern District of Virginia, where some acts may have occurred at the headquarters of the CIA.

There is, however, no indication that a Congress concerned with "the sound and equitable administration of justice," H. R. Rep. No. 536, at 3; S. Rep. No. 1992, at 3, intended to impose on those serving their Government the burden of defending personal damages actions in a variety of distant districts after leaving office. Absent a clear indication that Congress intended such a sweeping effect, we will not infer such a purpose nor will we interpret a statute to effect that result. "We think these laws ought to be construed in the spirit in which they were made—that is, as founded in justice—and should not be strained by technical constructions to reach cases which Congress evidently could not have contemplated, without departing from the principle upon which they were legislating, and going far beyond the object they intended to accomplish." *Brown* v. *Duchesne,* 19 How., at 197.

The judgments of the Courts of Appeals in No. 77–1546 and No. 78–303 are reversed, and the cases are remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE WHITE took no part in the consideration or decision of these cases.

MR. JUSTICE MARSHALL took no part in the decision of these cases.

MR. JUSTICE STEWART, with whom MR. JUSTICE BRENNAN joins, dissenting.

The Court today holds that in a suit against a federal officer for allegedly wrongful actions under color of legal authority, the venue provisions of § 2 of the Mandamus and Venue Act of 1962, 28 U. S. C. § 1391 (e), are applicable only if the officer is simply a nominal defendant, and the plaintiff's real grievance is against the Government. I disagree. It is my view that § 1391 (e) means what it says, and that it thus

applies as well to a suit for damages against a federal officer for his own wrongdoing.

I

When Congress enacted § 1391 (e) in 1962, this Court had recognized two types of suits against federal officers acting under color of legal authority.[1] See *Larson* v. *Domestic & Foreign Corp.,* 337 U. S. 682. The first of these two types of suits was based on a legal fiction designed to circumvent the doctrine of sovereign immunity. This fiction enabled an aggrieved party to obtain equitable relief in a case nominally directed against a federal officer if the officer had acted either unconstitutionally or in excess of his statutory authority. The theory underlying the fiction was that the relief sought was against the officer in his individual capacity, rather than against the Government. *Id.,* at 689–690. But, since any sovereign can act only through its agents, the reality was that the relief sought was in fact against the Government itself. The second type of suit, by contrast, was a direct action against the federal officer in his individual capacity for actions taken under color of legal authority. *Id.,* at 687. Such a suit typically sought to assess personal monetary liability against the officer.

The issue here is whether the venue and service of process provisions of § 1391 (e) were intended to apply to both of these kinds of suits. Section 1391 (e) provides in relevant part:

> "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority . . . , may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or

---

[1] For purposes of brevity, I hereafter refer to "suits against federal officers acting under color of legal authority" simply as "suits against federal officers."

(3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. . . .

"The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer . . . as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought."

Since either of the two types of suits described above is properly characterized as "[a] civil action in which a defendant is an officer or employee of the United States . . . acting . . . under color of legal authority," it is quite clear that they both fall within the plain meaning of § 1391 (e).[2] Thus, by its own terms, § 1391 (e) unambiguously extends to the second type of suit against a federal officer, that is, one in which, as here, money damages are sought directly from the federal officer himself.

## II

Relying on legislative history and policy considerations, the Court turns its back on the words of the statute and holds that it does not cover a suit against a federal officer for money damages. The legislative history, according to the Court, indicates that the general purpose of Congress in enacting the Mandamus and Venue Act of 1962 (Act) was to remove then

---

[2] The Court argues that since § 1391 (e) is written in the present tense ("[a] civil action in which a defendant *is* an officer or employee of the United States . . . *acting* in his official capacity or under color of legal authority" (emphasis added)), the phrase "acting . . . under color of legal authority" is properly construed as applying only to a nominal suit against a federal officer for equitable relief. Such a suit, the Court notes, is necessarily brought against a defendant who is presently serving as a federal officer. *Ante,* at 535–536. This argument falls short of the mark, however, for many suits against federal officers for money damages, such as those at issue here, are brought against the officers while they are still in Government service.

existing jurisdictional and venue obstacles to suits against federal officers for mandamus-type relief outside the District of Columbia. The legislative history further indicates, in the Court's view, that the specific, and *exclusive,* concern of Congress in adding to § 1391 (e) the phrase at issue here, "acting . . . under color of legal authority," was to ensure that the provision would govern suits against federal officers for equitable relief. Thus the Court concludes that the proper construction of the phrase "acting . . . under color of legal authority" is coextensive with the sole concern to which it was purportedly addressed. This construction is said to find further support in the policies underlying the Act.[3]

The Court thus purports to rely on the familiar rule that " 'in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute . . . and the objects and policy of the law.' " *Ante,* at 535, quoting *Brown* v. *Duchesne,* 19 How. 183, 194. See *Steelworkers* v. *Weber,* 443 U. S. 193, 201–202. This reliance is misplaced, however, since neither the legislative history nor public policy is inconsistent with the plain meaning of § 1391 (e).

## A

The forerunner of the Act was introduced as H. R. 10089, 86th Cong., 2d Sess. (1960). That bill provided:

> "A civil action in which each defendant is an officer of the United States *in his official capacity,* a person acting under him, or an agency of the United States, may be brought in any judicial district where a plaintiff in the action resides." (Emphasis added.)

---

[3] The Court also finds support for its construction of § 1391 (e) in our holding in *Schlanger* v. *Seamans,* 401 U. S. 487, 490, n. 4, that § 1391 (e) does not apply to habeas corpus actions. This reliance is misplaced, because the *Schlanger* decision turned on the *sui generis* nature of habeas corpus actions which, though "technically 'civil,' . . . [are] not automatically subject to all the rules governing ordinary civil actions." *Ibid.*

Following hearings and the submission of written comments on H. R. 10089 to a House Subcommittee of the Committee on the Judiciary, a new bill was introduced that parallels closely the current language of the Act. The new bill, H. R. 12622, 86th Cong., 2d Sess. (1960), contained two sections: the first vested all district courts with jurisdiction to hear suits seeking mandamus-type relief; [4] the second broadened the venue alternatives for a suit against a federal officer "acting in his official capacity *or under color of legal authority.*" (Emphasis added.) This bill passed the House in 1960, but the Senate adjourned without acting on it. The same bill was then reintroduced in the next Congress, H. R. 1960, 87th Cong., 1st Sess. (1961), and, with only minor amendments, was enacted by both the House and the Senate.

The question here is why Congress expanded the ambit of the second section of the Act, now § 1391 (e), to include not only a suit against a federal officer "acting in his official capacity," but also a suit against a federal officer "acting . . . under color of legal authority." The Court says that the legislative history reveals that the phrase "acting . . . under color of legal authority" was added to § 1391 (e) for the sole purpose of including within its coverage suits against federal officers for equitable relief. This view is said to find support in the positions announced by members of the House Subcommittee during the hearings on H. R. 10089, and in the Committee Reports that accompanied the subsequent versions of the bill.

I would have to agree that a principal purpose of adding the phrase "acting . . . under color of legal authority" to § 1391 (e) was to ensure that the venue provisions would apply to suits against federal officers for equitable relief. At the Sub-

---

[4] This section of the bill, with minor modifications, was later enacted as § 1 of the Act, 28 U. S. C. § 1361, which provides: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

committee Hearings on H. R. 10089, the proponent of the bill, Representative Budge, explained the basic problem to which it was addressed—that, in light of then existing venue and jurisdictional obstacles, "there is no opportunity for a judicial review of the action of any decision that is made by a Federal officer in charge out there [in the field], no matter how arbitrary or capricious, because it is too expensive to come back here [to Washington, D. C.] to litigate it." Hearings on H. R. 10089 before Subcommittee No. 4 of the House Committee on the Judiciary, 86th Cong., 2d Sess., 19–20 (1960).

The record of the testimony at the Subcommittee hearings, however, reveals substantial confusion both as to the scope of the problem and the manner in which it ought to be resolved. During the hearings, a representative of the Justice Department observed that since the bill, as drafted, applied only to a suit against a federal officer "in his official capacity," there would remain unresolved the venue and jurisdictional problems in the context of a suit for equitable relief brought against a federal officer in his individual capacity to sidestep the problem of sovereign immunity. *Id.*, at 32–33. In response, the Subcommittee's counsel proposed the addition of the language at issue here: "Suppose in order to take care of a body of law which seems to say that when a government official does something wrong he is acting in his individual capacity, we added the following language—'acting in his official capacity *or under color of legal authority.*'" *Id.*, at 61 (emphasis added). That phrase was then incorporated in the redrafted bill, H. R. 12622, as well as subsequent bills. The Committee Reports accompanying those bills confirm that Congress intended § 1391 (e) to govern suits against federal officers for equitable relief.

Although a principal purpose of adding the phrase "acting ... under color of legal authority" to § 1391 (e) thus undoubtedly was to ensure that the venue provision would apply to suits against federal officers for equitable relief, it is not at all clear

from the legislative history that Congress sought *only* to include such suits within the broadened ambit of the provision. Whatever may have been the intent of the Subcommittee members who conducted the hearings on the original bill, the Committee Reports accompanying subsequent bills—all of which included the phrase "acting . . . under color of legal authority"—indicated an intent to reach suits against federal officers not only for equitable relief, but also for money damages.  In describing the scope of the problem addressed by the Act, the Committee Reports indicated that "[t]he venue problem also arises in an action against a Government official *seeking damages from him* for actions which are claimed to be without legal authority but which were taken by the official in the course of performing his duty."  H. R. Rep. No. 1936, 86th Cong., 2d Sess., 3 (1960); H. R. Rep. No. 536, 87th Cong., 1st Sess., 3 (1961); S. Rep. No. 1992, 87th Cong., 2d Sess., 3 (1961) (emphasis added).

It is also significant that at least one of these Committee Reports, that of the Senate Judiciary Committee, was issued after the then Deputy Attorney General had recommended that the venue reform be tied in directly to the Administrative Procedure Act.  Letter from Deputy Attorney General White to Senator Eastland (Feb. 28, 1962), reprinted in S. Rep. No. 1992, *supra,* at 6.  "This," he observed, "[would] unquestionably eliminat[e] suits for money judgments against officers."  *Ibid.*  Although the Committee acted upon other suggestions in that letter, it took no steps whatsoever to narrow the ambit of § 1391 (e) to exclude suits for money damages. Rather, as stated above, the Committee Report indicated that the venue problem to which the bill was addressed applied to such suits.

### B

It is also instructive that shortly after the Act was signed into law, then Deputy Attorney General Katzenbach circulated a memorandum to all United States Attorneys to assist

them in defending suits brought under the newly enacted legislation. In that memorandum, he noted:

"The venue provision [§ 1391 (e)] is applicable to suits against Government officials and agencies for injunctions and damages as well as suits for mandatory relief. . . . As an example, suits for damages for alleged libel or slander by Government officials (which the Department defends on the ground that statements made by a Government official within the scope of his authority are absolutely privileged . . .) fall within the venue provision of this statute."

It is thus clear that the Justice Department regarded § 1391 (e) as applicable to suits against federal officers for money damages for actions taken under color of legal authority.

The significance of this memorandum is twofold. First, it represents a contemporaneous interpretation of § 1391 (e) that is wholly at odds with that adopted by the Court. Second, it indicates that the Justice Department has long assumed a special responsibility for representing federal officers sued for money damages for actions taken under color of legal authority. This longstanding responsibility is carried forth in current regulations. See 28 CFR §§ 50.15, 50.16 (1979).

The fact that the Justice Department, in most circumstances, will provide such representation substantially undercuts the Court's policy argument that to construe § 1391 (e) to govern suits for money damages would undermine the "sound and equitable administration of justice," see H. R. Rep. No. 536, *supra,* at 3; S. Rep. No. 1992, *supra,* at 3, by "plac[ing] federal officers, solely by reason of their Government service, in a very different posture in personal damages suits from that of all other persons, since under 28 U. S. C. § 1391 (b), suits against private persons for money damages must be brought 'in the judicial district where all the defendants reside, or in which the claim arose.'" *Ante,* at 544. The Court's argument overlooks the fact that since the Government

is willing to provide representation in a suit against a federal officer for money damages, the federal officer is relieved of the greatest burden involved in defending himself.

## III

The petitioners also argue that principles of due process militate against construing § 1391 (e) to govern suits against federal officers for money damages. This argument turns on the fact that § 1391 (e) provides not only for expanded venue, but also for nationwide service of process. It is the petitioners' position that a serious due process problem arises when the provisions of § 1391 (e) are taken to mean what they say, so as to permit a federal district court to exercise personal jurisdiction over a federal officer who lacks sufficient "minimum contacts" with the State or district in which the federal court sits.[5]

The petitioners concede that previous cases in this area have involved the Fourteenth Amendment requirement that a state court may acquire personal jurisdiction only if there exist "minimum contacts" between the defendant and the forum State. Reasoning by analogy, however, the petitioners

---

[5] The petitioners also argue, on statutory grounds, that § 1391 (e) does not confer personal jurisdiction. It is the petitioners' position that § 1391 (e) was designed only to govern venue and service of process, not to confer personal jurisdiction. The flaw in this argument is that, as a general rule, service of process is the means by which a court obtains personal jurisdiction over a defendant, and in the cases before us the petitioners have failed to demonstrate that there was any defect in the means by which service of process was effected.

It cannot seriously be argued that § 1391 (e) does not authorize extraterritorial service of process, for it provides that in civil actions governed by § 1391 (e) "the delivery of the summons and complaint to the officer or agency as required by the [Federal Rules of Civil Procedure] may be made by certified mail beyond the territorial limits of the district in which the action is brought." The legislative history, moreover, confirms that Congress intended extraterritorial service of process for all cases governed by § 1391 (e). See H. R. Rep. No. 536, 87th Cong., 1st Sess., 4 (1961).

argue that traditional notions of fair play and substantial justice inherent in the Due Process Clause of the Fifth Amendment similarly limit the exercise of congressional power to provide for nationwide *in personam* jurisdiction.

The short answer to this argument is that due process requires only certain minimum contacts between the defendant and the sovereign that has created the court. See *Shaffer v. Heitner,* 433 U. S. 186; *International Shoe Co. v. Washington,* 326 U. S. 310. The issue is not whether it is unfair to require a defendant to assume the burden of litigating in an inconvenient forum, but rather whether the court of a particular sovereign has power to exercise personal jurisdiction over a named defendant. The cases before us involve suits against residents of the United States in the courts of the United States. No due process problem exists.

This is not to say that a federal officer in a suit for money damages is without recourse in the event he is sued in an inconvenient place. A federal district court is vested with broad authority "[f]or the convenience of parties and witnesses, in the interest of justice, [to] . . . transfer any civil action to any other district . . . where it might have been brought." 28 U. S. C. § 1404 (a). It is not unreasonable to expect that district courts would look sympathetically upon a motion for a change of venue in any case where a federal officer could show that he would be substantially prejudiced if the suit were not transferred to a more convenient forum.

For the reasons stated, I think that § 1391 (e) means exactly what it says, and that its provisions present no constitutional problem whatever. Accordingly, I would affirm the judgments in both of these cases.