**Randy Rene LOZANO et al., Plaintiffs,**

v.

**Benjamin CIVILETTI et al., Defendants.**

**Civ. A. No. 80–205.**

United States District Court, District of Columbia.

Sept. 11, 1980.

---

David Goren, Michael Maggio, Washington, D. C., for plaintiffs.

Elisa B. Vela, Dept. of Justice, Washington, D. C., for defendants Benjamin Civiletti et al.

Charles L. Warren, Washington, D. C., for defendants John Fenner et al.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This case arises from the death of Lorenzo Ortega Lozano while in the custody of Ector County, Texas authorities, and from the dismissal of a subsequent federal grand jury investigation into the events surrounding his death. Plaintiffs, Lozano's wife and children, bring several civil rights and related state law claims against more than forty individual and governmental defendants, all of whom are residents of or located in the Western District of Texas. In addition, the plaintiffs bring civil rights claims against the United States Department of Justice, the Attorney General, and several of his subordinates for their allegedly wrongful dismissal of grand jury proceedings concerning Lozano's death.

The non-federal defendants have moved for dismissal or transfer of the case on various grounds, including improper venue and improper service of process. For the reasons set forth below, the motion to transfer the case to the Western District of Texas is granted.

### I.  Background

Plaintiffs allege five counts against forty-two individual or governmental defendants located in, or residents of, the Western District of Texas. Plaintiffs allege one additional count against the federal defendants.

The facts alleged in support of these claims are briefly these. On January 10, 1978, Larry Ortega Lozano was arrested for a traffic violation, beaten by several deputy sheriffs, booked for two counts of aggravated assault on the police officers, and denied bail.[1] In violation of state law, Lozano was not transferred to a mental hospital within twenty-four hours of the time he was suspected of being a mental patient.[2] He was finally taken to the county hospital on January 22, 1978, where he was heavily sedated, and several hours later, "severely beaten, brutalized, and abused.... [The

---

1. Plaintiffs' Complaint, ¶¶ 24–28.

2. *Id.,* ¶ 30.

beating inflicted by defendants] far exceeded that which would have been reasonable to restrain the deceased in his padded cell."[3] As a result of defendants' treatment of him, Lozano died on January 22, 1978. According to the complaint, Lozano's treatment from the time of his arrest until the time of his death twelve days later was inflicted by the Texas defendants acting under color of law in their official and individual capacities.[4] This treatment was allegedly inflicted on Lozano because of his Latin ancestry, in violation of his civil rights.

The first five counts of the complaint involve only state defendants and the events up to Lozano's death; the sixth count involves only federal defendants and their dismissal of a federal grand jury investigating the circumstances surrounding Lozano's death. This sixth count alleges a conspiracy among the Attorney General and his subordinates to deprive the deceased and plaintiffs of their rights by causing the federal grand jury investigating the case to be dismissed before it could return indictments.[5]

Plaintiffs seek to use this sixth count as the basis for venue in the District of Columbia. Plaintiffs have demanded a jury trial on all six counts of their complaint.

II. *Proper Venue*

■ Plaintiffs rely on 28 U.S.C. § 1391(e) in order to establish venue, and with regard to the federal defendants, plaintiffs' reliance is well-placed. Washington, D.C. is the federal defendants' official residence, and under the plaintiffs' theory, the cause of action against these defendants arose in Washington, D.C., as well as in the Western District of Texas. Thus, under either §§ 1391(e)(1) or (e)(2), venue in this district

is proper with regard to the claim against the federal defendants.[6]

■ Venue with regard to the five separate claims against the forty-two Texas defendants is *not* properly laid in this district. Section 1391(e) only allows additional, non-federal defendants to be joined if the plaintiffs satisfy the "other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party." Congress inserted the quoted language into the statute in 1976. Pub.L.No. 94–574, § 3, 90 Stat. 2721–22. The addition was explicitly intended to prevent a plaintiff from obtaining venue against any private defendant

> by simply joining as a party to the action a federal official over whom venue may be obtained under 28 U.S.C. § 1391(e) .... In effect, this will mean that a private defendant can only be sued in a venue where he could have been sued if the Government had not been a party.

H.R.Rep.No.1656, 94th Cong., 2d Sess. 19 *reprinted in* [1976] *U.S.Code Cong. & Ad. News* 6121, 6139–40.

This construction of § 1391 is supported by the Supreme Court's recent decision in *Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980), in which the court ruled that § 1391(e) did not confer nationwide venue in damages actions against federal officials in their individual capacity. *Id.,* 444 U.S. at 542, 100 S.Ct. at 783–785. Instead, the court limited nationwide venue to actions which were in essence against the United States, primarily mandamus-type suits. *Id.* Although venue in the District of Columbia is proper with regard to the federal officials involved in this case, it is clear that the court does not favor a construction of the statute which would confer nationwide venue in damages actions

---

3. *Id.,* ¶ 32.

4. *Id.,* ¶¶ 24–26.

5. *Id.,* ¶¶ 38–39.

6. The federal defendants have not challenged venue, but have moved to dismiss the claim against them on several grounds, including sovereign immunity, prosecutorial immunity, and improper service of process. We do not reach these issues since we find that venue was improperly laid with regard to the other defendants, making transfer of this case to the Western District of Texas the appropriate disposition of the case. The federal defendants' motions may be ruled upon in the Western District of Texas.

against *any* defendant, federal or non-federal.

■ Plaintiffs argue that the Attorney General and his subordinates are indispensable parties to this action, who may only be sued in the District of Columbia, their official residence. Assuming *arguendo* that the federal defendants are indispensable parties, § 1391(e) was enacted in 1962 explicitly to provide nationwide venue in mandamus-type suits against federal officials. *Stafford v. Briggs, supra,* at 542, 100 S.Ct. at 783–785. To the extent that plaintiffs seek damages against federal officials § 1391(b) provides for venue where the cause of action arose: either in this district or in the Western District of Texas. Thus, even if federal defendants are indispensable parties as the plaintiffs contend, that status does not require venue to be laid in this district.

■ Plaintiffs must establish venue with regard to Texas defendants under some statutory provision besides § 1391(e). As there is no special venue provision for civil rights claims of this type, § 1391(b) governs this case. *Jones v. Bales,* 58 F.R.D. 453, 458 (M.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.). Federal defendants reside in the District of Columbia, while non-federal defendants reside in Texas. Under these circumstances, § 1391(b) requires that venue be laid in the district "in which the claim arose."

■ This court must decide where these claims arose by referring to the important events in the case and making a "commonsense appraisal of the implications of these events for accessibility to witnesses and records." *Lamont v. Haig,* 590 F.2d 1124, 1133–34 (D.C.Cir.1978). That commonsense appraisal strongly favors the Western District of Texas so far as the claims against the non-federal defendants are concerned. The complaint alleges nothing to connect these Texas defendants to Washington, D.C. The claims against them are separate from the claims against the federal defendants; the acts complained of in these claims all occurred in the Western District of Texas; no conspiracy between the federal and non-federal defendants is alleged. In short, plaintiffs have alleged entirely separate causes of action, one against federal defendants, and five against the state defendants. Venue in the claim against federal defendants is proper in either this district or the Western District of Texas; venue in the claims against the non-federal defendants is proper only in the Western District of Texas.

III. *Transfer*

■ The non-federal defendants have moved to transfer this case because of improper venue, 28 U.S.C. § 1406(a), and for the convenience of the parties and witnesses, 28 U.S.C. § 1404(a). Transfer on both grounds is appropriate in this case.

Proof of the plaintiffs' claims may depend heavily upon eyewitness testimony from many of the forty-two non-federal defendants, and from other witnesses, almost all of whom are residents of the Western District of Texas. The expense of trying this case in Washington, D.C. would be substantially greater than trying it in the Western District of Texas. Moreover, trial of this case in Washington might well entail the extensive use of depositions, which would be far less satisfactory evidence on the key issues of this case than would live testimony. Transfer seems likely to result in a cheaper trial and better evidence, making transfer under § 1404(a) appropriate.

■ Venue in this district is legally improper, requiring transfer or dismissal under 28 U.S.C. § 1406(a). Transfer is the better choice here since the statute of limitations on these claims has now run.

> When a lawsuit is filed, that filing shows a desire on the part of the plaintiff to begin his case and thereby toll whatever statutes of limitation would otherwise apply. The filing itself shows the proper diligence which such statutes of limitation were intended to insure.

*Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). Where a district court must choose between dismissing or transferring a case in which the statute of limitations has run, transfer is the better choice where the plaintiffs

allege a substantial claim. *Id.*, at 466, 82 S.Ct. at 915. Plaintiffs here do allege substantial claims. The defendants do not contest either the fact of Lozano's death or the fact that it occurred while Lozano was in their custody.

■ Section 1406(a) authorizes the transfer of cases, "however wrong the plaintiff may have been [with regard to] venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman, supra*, at 466, 82 S.Ct. at 915; *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 79–80 (2d Cir. 1978). Thus plaintiffs' failure to make proper service on the non-federal defendants is not a ground for dismissal, either here or in the Western District of Texas. Although 28 U.S.C. § 1391(e) does not authorize plaintiffs to serve the non-federal defendants by certified mail, 2 Moore's Fed.Prac. ¶ 4.29 at p. 4–319, n. 46, the proper remedy is, as most of the non-federal defendants recognized,[7] to effect personal service after the action is transferred. Filing in this district tolls the statute of limitations on these claims, allowing a reasonable time for plaintiffs to effect such service after the transfer. *See Goldlawr, Inc. v. Heiman, supra*, at 466, 82 S.Ct. at 915.

■ Finally, considerations of federalism also favor transfer of this case to Texas. Plaintiffs allege several pendent claims under state law, and alleged violations of other state statutes are an important part of plaintiffs' federal claims.[8] Experience with and training in Texas law make the federal district court for the Western District of Texas a more appropriate forum for a decision on these state law issues than this court would be.

*Conclusion*

For the foregoing reasons, this case is transferred to the Western District of Texas. Plaintiffs will effect personal service on the non-federal defendants in this case within a reasonable time after the transfer.

---

**7.** Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss, pp. 8–9 (Mar. 18, 1980).

**8.** Complaint, II, ¶ 2 (pendent claim jurisdiction); VI, ¶ 24 (federal claim incorporating state law issues); VII, ¶ 26 (same); VIII, ¶ 30 (same); IX, ¶¶ 32, 33 (same); X, ¶ 36 (same).