Hickey v. St. Martins Press          CV-95-475-M    05/09/97

UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEW HAMPSHIRE


George W. Hickey, Jr.,
        Plaintiff

v.                                          Civil No. 95-475-M

St. Martin's Press, St. Martin's Paperbacks,
Bonar Menninger, and Simon & Schuster, Inc.,
        Defendants


O R D E R


George W. Hickey, Jr., brings this action seeking compensation for damages allegedly sustained as a result of defendants' publication of defamatory statements about him.  He claims that the book Mortal Error, written by defendant Bonar Menninger and published in various iterations by St. Martin's Press ("St. Martin's"), St. Martin's Paperbacks ("SMP"), and Simon & Schuster ("S&S"), falsely accuses him, a former secret service agent, of having accidentally fired the shot that killed President Kennedy.


Presently before the court are several discovery motions, along with motions to clarify this court's order dated September 30, 1996.  Additionally, defendant Simon & Schuster, Inc. has moved to dismiss the republication claims pending against it for

lack of personal jurisdiction and/or improper venue. Defendants have also moved to transfer this case to the United States District Court for the District of Maryland, plaintiff's home state, where a substantially similar defamation action is pending.

**Facts**

George Hickey is a retired Special Agent of the United States Secret Service. From 1963 to 1971, he served in the presidential and vice-presidential protective details. On the day of President Kennedy's assassination, Hickey was riding in the Secret Service vehicle immediately behind the President's limousine. As is well known, the assassin was subsequently identified as Lee Harvey Oswald, and, after examining the circumstances surrounding the President's assassination, the Warren Commission concluded that Oswald acted alone. Nevertheless, since 1963, numerous other theories regarding President Kennedy's assassination have surfaced. Since at least the early 1970's, Howard Donahue has publicly stated his belief that, in the confusion following Lee Harvey Oswald's first shot, Hickey inadvertently discharged his AR-15 rifle, firing the fatal bullet that struck President Kennedy.

2

In February, 1992, St. Martin's published the hardcover edition of Mortal Error, written by Bonar Menninger, which details Donahue's theories regarding the Kennedy assassination, including numerous statements regarding Hickey's alleged involvement not only in the shooting, but also in an alleged coverup that followed. In April, 1992, the audiotape version of Mortal Error, published by S&S, went on sale in New Hampshire. And, most recently, in September, 1992, SMP published the paperback edition of Mortal Error.

On October 2, 1995, plaintiff filed his complaint against defendants in this forum. Subsequently, on December 5, 1995, he filed his first amended complaint, and on January 26, 1996, he filed a second amended complaint in this court. Then, on May 16, 1996, plaintiff filed a complaint against St. Martin's Press and Bonar Menninger in the United States District Court for the District of Montana. Less than three months later, on August 14, 1996, he filed a similar action against St. Martin's Press, St. Martin's Paperback, and Simon & Schuster, Inc., in the United States District Court for the District of Maryland. Counsel for plaintiff has also threatened to file similar actions in England, in Wisconsin, and in other states.

On November 8, 1996, the United States District Court for the District of Maryland stayed the case pending before it, until this court and the Montana court had ruled upon the motions to transfer which were pending before them.  It held that, "If those courts transfer their earlier filed actions to this Court, the stay entered in this Court could be lifted and the actions could be consolidated here."  Hickey v. St. Martin's Press, Civil No. H-96-2530, slip op. at 6 (D.Md. November 8, 1996).  In an order dated March 24, 1997, the United States District Court for the District of Montana transferred the action pending before it to the United States District Court for the District of Maryland.

**Discussion**

I.   Defendants' Motion to Transfer

In its order dated September 30, 1996, this court dismissed plaintiffs' claims based upon three published versions of the book Mortal Error: a hardback edition, a paperback edition, and an audiotape version.  What remain are plaintiff's "republication" claims, in which he alleges that defendants are liable for damages he sustained when third parties republished allegedly defamatory statements contained in the various iterations of Mortal Error.  As defendants note, these facts

4

place this case in an unusual posture.  Plaintiff's claims against the publishers of <u>Mortal Error</u> have been dismissed as barred by the applicable statute of limitations, so plaintiff's remaining claims seek to hold those publishers liable exclusively for third-party references to <u>Mortal Error</u>.

In light of the recent developments in this case (including, of course, the developments in the United States District Courts in Montana and Maryland), the court has concluded that it would be appropriate and just to transfer this proceeding to the United States District Court for the District of Maryland.  Section 1404(a) of Title 28 of the United States Code provides that:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought.

28 U.S.C. § 1404(a).  Plainly, this action "might have been brought" in the District of Maryland; plaintiff actually filed an action in that forum.  Moreover, this case is appropriate for transfer to the District of Maryland because: (1) plaintiff has, by virtue of filing a substantially similar action in that forum, conceded that venue is proper; (2) plaintiff is a resident of Maryland, which suggests, among other things, that Maryland has a

5

particular interest in hearing this matter; (3) Howard Donahue (the ballistics expert who first advocated the theory of President Kennedy's assassination which is articulated in Mortal Error) is a resident of Maryland; (4) Donahue's wife, who defendants assert figures prominently in the book and in plaintiff's claims, is also a resident of Maryland; (5) defendant Bonar Menninger researched and prepared Mortal Error primarily in Maryland and Virginia; (6) plaintiff has yet to identify a single witness who resides in New Hampshire; (7) plaintiff has apparently acknowledged that "much of the evidence that would be used in this case is within the [District of Columbia] metropolitan area" (Plaintiff's Memorandum in Opposition to Defendants' Motion to Stay Proceedings, filed in United States District Court for the District of Maryland (quoted by defendants in their memorandum in support of motion to transfer venue)); and (8) as plaintiff himself concedes, he is elderly and in poor health and seeks prompt judicial review of his claims before his health deteriorates further or he passes away (a goal most readily accomplished by litigating his defamation claims against defendants in a single forum, close to his home).

6

Authority to transfer a case pursuant to 28 U.S.C. §1404(a) is committed to the court's broad discretion.  United States ex rel. LaValley v. First Nat'l. Bank, 625 F.Supp. 591, 594 (D.N.H. 1985).  In light of the foregoing factors, the court holds that transfer of this case to the United States District Court for the District of Maryland is appropriate.  See Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955) ("When Congress adopted §1404(a), it intended to do more than just codify the existing law on forum non conveniens. . . As a consequence, we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit courts to grant transfers upon a lesser showing of inconvenience."); Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988) ("The district court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'"); Driver v. Helms, 577 F.2d 147, 157 (1st Cir. 1978) ("We would expect courts to be sympathetic to motions for change of venue when defendants would otherwise be substantially prejudiced and when there is an alternative venue that would protect the parties' rights."),

7

rev'd on other grounds sub nom, <u>Stafford v. Briggs</u>, 444 U.S. 527 (1980).

Here, as in <u>United States ex rel. LaValley</u>, <u>supra</u>, plaintiffs "have not convinced the court that the convenience of the parties and witnesses involved would be best served by keeping this action in New Hampshire. 'The plaintiff may not, by choice of an inconvenient forum, inflict upon the defendant expense and trouble not necessary to plaintiff's own right to pursue his remedy.'" <u>Id</u>. at 594 (quoting <u>United States v. General Motors Corp.</u>, 183 F.Supp. 858, 860 (S.D.N.Y. 1960)). And, although plaintiff filed his action against defendants in this forum first, the court concludes that the interests of justice and concerns for the convenience witnesses and the parties counsel strongly in favor of transfer. <u>Cf.</u> <u>Northwest Airlines, Inc. v. American Airlines, Inc.</u>, 989 F.2d 1002, 1006 (8th Cir. 1993) ("To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction. The rule, however, yields to

the interests of justice, and will not be applied where a court finds 'compelling circumstances' supporting its abrogation.").

Moreover, transferring this matter to the United States District Court for the District of Maryland will minimize the risk that defendants and any potential witnesses will have to bear the costs and inconvenience associated with litigating plaintiff's claims in numerous federal forums. It will also minimize the risk that separately tried cases might result in inconsistent verdicts. Finally, although the transfer of this case to the District of Maryland will not preclude plaintiff from filing future actions in other districts (or abroad), it will facilitate the orderly resolution, in a single forum, of all claims presently pending against the defendants and, therefore, promote the efficient use of judicial resources.

II. Remaining Pending Motions

To insure that the Maryland District Court is not unduly burdened by this court's decision to transfer this proceeding, the court will briefly address the remaining outstanding motions filed by the parties. Hopefully, this matter will then be in a

procedural posture which enables the parties to conduct orderly

discovery and, if appropriate, proceed to a trial on the merits.

1.  Defendants' unopposed motion for clarification of the court's order dated September 30, 1996 (document no. 51) is granted. Count 3 of plaintiff's second amended complaint is dismissed as barred by the applicable statute of limitations.

2.  Defendants' motion for further clarification (document no. 52) is granted in part and denied in part. The claims alleged in paragraph 40(c) of the Second Amended Complaint are dismissed as barred by the statute of limitations. In all other respects, defendants' motion is denied, without prejudice to the refiling of such a motion, if appropriate, with the United States District Court for the District of Maryland.

3.  Defendants' motion to stay discovery (document no. 57) is granted. This matter shall be transferred to the United States District Court for the District of Maryland in a stayed status. That court may then enter an order structuring discovery in the manner it deems most appropriate.

4.  Plaintiff's motion to compel discovery and for sanctions (document no. 62) is denied.

5.  Defendants' motion to continue trial date (document no. 63) is denied as moot. The United States District Court for the District of Maryland will schedule a trial date, consistent with the preexisting demands of its civil docket.

## Conclusion

For the reasons discussed above, the court hereby orders the

transfer of this case, with discovery in a stayed status, to the

10

United States District Court for the District of Maryland. Defendants' motion to dismiss or in the alternative to transfer (document no. 53) is granted in part and denied in part. To the extent it seeks the dismissal of this action, it is denied. To the extent it seeks transfer of this action to the District of Maryland, it is granted.

The final pretrial conference before this court, scheduled for Thursday, June 19, 1997 at 8:30 a.m., is, in light of the court's decision to transfer this case, canceled.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 9, 1997

cc:  James H. Lesar, Esq.
     Mark S. Zaid, Esq.
     Mark H. Campbell, Esq.
     William L. Chapman, Esq.

11