**MILLIKEN & COMPANY, Plaintiff,**

v.

**FEDERAL TRADE COMMISSION, et al., Defendants.**

No. 79–126–5.

United States District Court, D. South Carolina, Greenville Division.

May 10, 1983.

**512**

Howard L. Burns, Burns, McDonald, Bradford, Erwin & Patrick, Greenwood, S.C., Paul J. Newlon, Michael Lampert, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for plaintiff.

Warren S. Grimes, Joanne L. Levine, John H. Carley, Howard E. Shapiro, Ernest J. Isenstadt, F.T.C., Washington, D.C., J.D. McCoy, III, Asst. U.S. Atty., Greenville, S.C., for defendants.

## ORDER ON DEFENDANTS' MOTIONS TO TRANSFER UNDER 28 U.S.C. § 1406(a) & 28 U.S.C. § 1404(a).

### NATURE OF PROCEEDING

HEMPHILL, Senior District Judge.

Defendants, by Motion(s) originally filed September 17, 1981, attack the venue[1] of this case as improperly laid (28 U.S.C. § 1406(a))[2] in the District of South Carolina, and, alternatively, seeks discretionary (for the convenience of parties and witnesses, in the interest of justice) transfer under provisions of 28 U.S.C. § 1404(a).[3] This is the latest in a series of legal maneuverings which, commencing with the filing of the complaint on January 19, 1979, pits the tax paying industry—plaintiff against the ambitions of a government bureaucracy.[4] The critical issue involves the making public of certain marketing information precious to plaintiff's business practices. The vehicle which plaintiff pictures as the devouring monster is Federal Trade Commission Form LB named the LINE OF BUSINESS FORM, an annual report, a six (6) page questionnaire dependent on the Commission rulings as to other procedures pending before that body. On March 23, 1981, the Court filed its Order approving a stipulation protecting data used by plaintiff in Carpet Sales Estimation Procedures, and providing for *in camera* inspection, etc. On August 28, 1981, the Court ordered jurisdiction to remain with the hearing judge to prevent time-loss in orientation of a new member of the court. By Order filed September 1, 1981, the Court approved a stipulation and injunction, sealed by the Court, and providing other procedures incident to publication of both 1974 and 1975 LB Forms.

On September 17, 1981, defendants made a Motion to Transfer the case for lack of venue. This was heard November 16, 1981, and various memoranda and affidavits supporting opposition were thereafter filed.

---

1. The place where the power to adjudicate is to be exercised. *See Iselin v. La Coste,* 147 F.2d 791, 795 (5th Cir.1945).

2. 28 U.S.C. § 1406(a) provides:
§ 1406. CURE OR WAIVER OF DEFECTS
(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

3. 28 U.S.C. § 1404(a) provides:

§ 1404. CHANGE OF VENUE
(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

4. It may be observed that "the country will not be saved by even the best motives in Washington ... Thank GOD for the limitations inherent in our federal system." Mason: Brandeis, 621.

On May 3, 1982, October 19, 1982 and December 16, 1982, the Court received various supplemental memoranda in support of the Motion to Transfer. Plaintiff's response was filed January 5, 1983. Subsequently, defendant withdrew a part of the Motion (as to 1406(a)).

## FINDINGS AS TO VENUE

Beginning in 1974, defendant Federal Trade Commission ("FTC") and plaintiff ("Milliken") have been involved in this dispute begat by FTC's communicated intention to publish certain financial data from the LB Forms required of Milliken, which consistently has taken the position that the publication would endanger the competitive status which Milliken, a privately owned company with its principal place of business in Spartanburg, South Carolina, has apparently guarded carefully. Milliken's stated belief is that publication would violate FTC's orders and rules, numerous federal statutes, and the fourth and fifth amendments of the Constitution. Milliken first attempted to assert its rights before the FTC and, since February 1979, before this Court. Whether the merits of this controversy are ripe for decision does not appear in the record at this time.

■ After abandonment of the *Hallmark*[5] argument (based on erroneous assumptions/representations to this Court), defendant seeks to rely on 15 U.S.C. § 57b–2(c)[6] which provides:

> (c)(1) All information reported or otherwise *obtained* by the Commission which is not subject to the requirements of subsection (b) of this section shall be considered confidential when so marked by the person supplying the information and shall not be disclosed, except in accord-

ance with the procedures established in paragraph (2) and paragraph (3).

> (2) If the Commission determines that a document marked confidential by the person supplying it may be disclosed because it is not a trade secret or commercial or financial information which is obtained from any person and which is privileged or confidential, within the meaning of section 46(f) of this title, then the Commission shall notify such person in writing that the Commission intends to disclose the document at a date not less than 10 days after the date of receipt of notification.

> (3) Any person receiving such notification *may, if he believes disclosure of the document would cause* disclosure of a trade secret, or commercial or financial information which is obtained from any person and which is privileged or confidential, within the meaning of section 46(f) of this title, before the date set for release of the document, bring an action in the district court of the United States for the district within which the documents are located or in the United States District Court for the District of Columbia to restrain disclosure of the document. Any person receiving such notification may file with the appropriate district court or court of appeals of the United States, as appropriate, an application for a stay of disclosure. The documents shall *not* be disclosed until the court has ruled on the application for a stay. [Emphasis Added].

This Court refuses to accept this language as *sufficient or intended* to overrule the time-proven provision of 28 U.S.C. § 1391(e)[7] or 28 U.S.C. § 1404(a). The provision in the 1980 amendment (57b–2(c)) is permissive, and no language is employed to dictate that the *venue shall* be in the Dis-

---

**5.** *Hallmark Cards, Inc. v. F.T.C.*, Civ. No. 81–0715–CV–W–8.

**6.** Pub.L. 96–252—May 28, 1980.

**7.** 28 U.S.C. § 1391(e) reads:
§ 1391. VENUE GENERALLY
(e) A civil action in which each defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or

under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which: (1) a defendant in the action arises, or (2) the case of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action.

trict of Columbia. The Commission argues that it is an "independent federal agency,[8] with headquarters in Washington, D.C." This does not persuade this Court that it is other than an administrative body created by statute (of the United States), and "has only such duties and powers, as are given it, by expression of fair implication therefrom, by statute." *Chamber of Commerce v. Federal Trade Commission*, 13 F.2d 673, 683 (8th Cir.1926). It is subject to the law as any other person, firm, corporation or governmental bureaucracy. As was stated by a three-judge court in *Florida East Coast Railway Company v. United States*, 259 F.Supp. 993, 997 (M.D.Fla.1966), *aff'd.* 386 U.S. 544, 87 S.Ct. 1299, 18 L.Ed.2d 285:

> The Commission may, be one or more of its members, or by such examiners as it may designate, prosecute any inquiry necessary to its duties in *any part of the United States.* [Emphasis Added].

It is unquestioned that the plaintiff resides [has principal place of business] at Spartanburg, South Carolina.[9] It may be said the cause of action arises in part in South Carolina, as it is there the records are kept, and there the forms which are subject matter of the action are filled out; there the Order to submit the form (1973 Order) was served. This is not a suit for money damages against any defendant. This Court finds guidance in the language of Chief Justice Burger in *Stafford v. Briggs,* 444 U.S. 527, 535–36, 100 S.Ct. 774, 780, 63 L.Ed.2d 1, 9 (1980):

> ... Congress enacted the Mandamus and Venue Act of 1962. Section 1 ... provides that actions in the nature of mandamus can be brought in any district

court of the United States.[10] Section 2 of the Act, 28 U.S.C. § 1931(e) provides a similarly expanded choice of venue and authorizes service by certified mail on federal officers or agencies located outside the district in which the suit is filed. *Stafford,* 444 U.S. at 534, 100 S.Ct. at 779.

> The considerations of policy which demand that an action against an official may be brought locally rather than the District of Columbia require similar venue provisions where the action *is based upon the fiction the officer is acting as an individual.* [Emphasis Added] [Quoting Congressional Report].

*Stafford,* 444 U.S. at 539, 100 S.Ct. at 782.

> Section 2 [§ 1391(e) ] is the venue section of the bill. Its purpose is similar to that of Section 1. It is designated to permit an action *which is essentially against the United States* to be brought locally rather than requiring it to be brought in the District of Columbia simply because Washington is the official residence of the officer or agency sued. [Quoting from Congressional Report].

*Stafford,* 444 U.S. at 540, 100 S.Ct. at 782.

This Court finds no *requirement* in the Fair Trade Commission statutes that commands that suit be brought in the District of Columbia.

■ The Court finds some restraint in *Reuben H. Donnelley Corp. v. F.T.C.,* 580 F.2d 264 (7th Cir.1978), wherein the Court held that for venue purposes the residence of the Federal Trade Commission is the District of Columbia. To hold that such governs in this case would defeat the language of § 1391(e)[11] and thwart the intent

---

**8.** It was conceived as regulatory arm of the United States Congress and is quasi-legislative and quasi-judicial but not independent, *Humphrey's Executor v. U.S.,* 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611, as is evidenced by the requirement that it report regularly to the Congress.

**9.** The amended complaint, verified, states that "Plaintiff Milliken & Company ... is a corporation organized under the laws of Delaware, with a principal place of business at Spartanburg, South Carolina." This is not refuted anywhere in a voluminous record.

**10.** 28 U.S.C. § 1361.

Action to compel an officer of the United States to perform his duty. "The district courts shall have original jurisdiction of any action in the nature of Mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

**11.** This Court is cognizant of *Robert E. Lee & Co. v. Veatch,* 301 F.2d 434 (4th Cir.1961), *cert. denied,* 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55 (1962), in which the Fourth Circuit examined 28 U.S.C. § 1391(c) and held that subsection

of Congress so ably spelled out in *Stafford, supra.* Additionally, defendants do not seek removal to Delaware but to Washington. This Court would follow the reasoning expressed in *Pruess v. Udall,* 359 F.2d 615, 618 (D.C.Cir.1965).

Section 1391(e) was intended to relieve plaintiffs of the burden of litigating far from their residences, to relieve the courts in the District of Columbia of some of their case load, and to take advantage of the expertise district judges acquire in problems peculiar to their areas.

The forum is available, the parties have litigated there, off and on for more than 2 years—the action is in the nature of a Mandamus, even if considered a negative pursuit of the remedy, for the result is the same. This action is essentially an action against the United States.

In *Blackburn v. Goodwin,* 608 F.2d 919, 922 (2d Cir.1979), this Court finds the rationale here followed:

Through the 1962 Act, Congress sought "to facilitate review by the Federal courts of administrative actions" in two ways: firstly, by enacting 28 U.S.C. § 1361, which grants to all district courts original jurisdiction over actions to mandamus federal officers, employees and agencies; and secondly, by broadening the venue provisions of Title 28 through section 1391(e) "so that when a superior officer residing in Washington was a necessary party the action could still be brought in the field. . . ." *Liberation News Service v. Eastland,* supra, 426 F.2d [1379] at 1384 [ (2nd Cir.1970) ]. The House Report accompanying the two-part bill indicates that the purpose of section 1391(e) was "similar to that of [section 1361]." The new venue provision was designed to permit an action which *is essentially against the United States* to be brought locally rather than requiring that it be brought in the District of Columbia simply because Washington is the official residence of the officer or agency

(c) did not permit a plaintiff-corporation to bring suit in any judicial district in which it is incorporated, licensed to do business, or doing

sued." House Report, supra, at 2 (emphasis added). Moreover, both the House and Senate Reports emphatically note the qualification that section 1391(e) was intended by Congress to apply only to "actions which are in essence against the United States." House Report, supra, at 2–4; Senate Report, supra, at 2786; see *Macias v. Finch,* 324 F.Supp. 1252, 1254–55 (N.D.Cal.1970).

It is clear from the legislative history that section 1391(e) provides for venue in cases where the plaintiff seeks to compel or enjoin governmental action by suing a federal officer in his official capacity. These are suits in essence against the United States. Further they are civil actions which prior to 1962 could have been brought only in the District of Columbia.

Finally, balancing the equities of fairness to each party, plaintiff's choice of forum should be allowed here. *See Florida Nursing Home Association v. Page,* 616 F.2d 1355 (5th Cir.1980).

The Court is of the opinion that under 28 U.S.C. § 1391(e) plaintiff may pursue his claim in the courts of the District of South Carolina.

We now face that part of defendants' motion which is grounded on 28 U.S.C. § 1404(a). (*See* Note 3 *supra* ). Again, the Court finds no merit in defendants position.

A review of the factual climate facing the Court in passing on the issue(s) of convenience of witnesses and promotion of justice may be helpful.

(1) Plaintiff is a privately-owned textile company, incorporated under the laws of the State of Delaware, but having its principal place of business in Spartanburg, South Carolina, where its president has his residence.

(2) The complaint, so far uncontroverted, alleges that the data and documents necessary for completion of the Line of Business reporting form were and are stored at plaintiff's facilities in Spartanburg.

business. The instant case is distinguishable in that venue is sought under 28 U.S.C. § 1391(e).

(3) The complaint alleges (and must be considered as true for the purpose of this motion) that the FTC requests for LB Form data were addressed to a plaintiff employee stationed at Spartanburg.

(4) Milliken's principal officers, managers, and employees charged with obeying FTC's request for information are residents of South Carolina, and if called as witnesses could attend court hearings with a facility of production of supporting documents and a minimum of inconvenience.

(5) According to the complaint, the LB Forms in issue were completed by plaintiff's officers and managers stationed at Spartanburg, and residing in South Carolina.

(6) According to the complaint several of plaintiff's subsidiaries, where financial data is consolidated with plaintiff's for reporting purposes, are incorporated and headquartered in the District of South Carolina.

(7) Plaintiff has filed with this Court the affidavit of James H. Toy, Assistant Secretary of plaintiff, whose office and residence are in Spartanburg, South Carolina; he avers he has filled out and signed all LB Forms for plaintiff since 1973, and executed affidavits relating to plaintiff's objectives; he states that not only would he be a witness at the trial of this action, but counsel will depend on him for in-trial consultation and advice; travel to Washington, D.C. and attendance at trial there would be a great burden on his performance of the professional duties for which he is hired; he outlines the responsibilities requiring his constant presence in Spartanburg; he outlines other inconveniences he and plaintiff would suffer by his absence from Spartanburg and attendance at court in the District of Columbia.

(8) There is no counter affidavit to this affidavit.

(9) Although William Long, Member of the Line of Business Program in the Federal Trade Commission declared in the Hallmark litigation (referred to by defendants in their motion(s)) that his absence from Washington to attend a trial would seriously disrupt the program, the Court has before it the affidavit of Michael A. Lampert, associate with plaintiff's attorneys cataloguing various and frequent absences from Washington on the part of Long, (and the republic did not crumble) and showing Long to have taken a two-weeks vacation; this shows the convenience of moving about enjoyed by government employees.

(10) The affidavit of Lampert has not been countered.

(11) The Court here has had considerable contact and presided over considerable activity in the controversy for three (3) years.

(12) In February, 1979, Milliken first invoked the power of this Court to protect it from the harm it will suffer if the LB data are published.

(13) On July 24, 1979, after approving three stipulations extending the FTC's time to move or answer in response to the original complaint, this Court approved the Stay Stipulation entered into by plaintiff and FTC. That stipulation, as approved by this Court, provided, *inter alia,* that plaintiff would file the 1975/76 LB Forms with FTC, and that FTC could not bring an enforcement proceeding against plaintiff in connection with filing of these forms; that FTC must notify plaintiff prior to publication of any of the information contained in the forms, and that the action would be deactivated without prejudice, with leave to reactivate in *this* Court before the same judge.

(14) In November 1980, this Court approved and ordered the Answer Stipulation that had been agreed upon by plaintiff and the FTC. This stipulation enlarged the time in which the FTC was required to file its answer, provided plaintiff with the right to amend its complaint a second time, realized that plaintiff might one day be before this Court seeking temporary relief in this matter, and set the guidelines for notice of such action. That stipulation specifically provided that notice should be given to the

Office of the General Counsel of the FTC *and* to the United States Attorney for the District of South Carolina.

█ Neither the Stay Stipulation nor the Answer Stipulation contained any hint that the FTC objected to this forum. In fact, the contents of both stipulations indicate the FTC's acceptance of this Court as the appropriate forum for the resolution of this dispute. Only in connection with a third stipulation, in March, 1981, did the FTC first seek an objection-saving provision. The confidentiality stipulation thus contains a provision that states that *that* stipulation was entered into without prejudice to the FTC's defense. This attempt to save the FTC's privilege to object to venue, which is easily waived, came only after the FTC, by its actions, had already waived its objection. This provision, thus, saved nothing.

This Court has taken into consideration the access to evidence in this case. The records from which all data for LB Forms are supplied are at or near Spartanburg, in the District of South Carolina, and this fact is entitled to great weight. *American Standard, Inc. v. Bendix Corporation*, 487 F.Supp. 254 (W.D.Mo.1980); *Castanho v. Jackson Marine, Inc.*, 484 F.Supp. 201 (E.D. Tex.1980). In the interest of justice the nearer the Court is to the records is a factor; transporting records to Washington could well pose expense, time and effort which would not be the case in a South Carolina court. Defendant has not met the statutory purpose as to this facet of this case.

█ Defendant, as moving party, has the burden of establishing whether there should be any change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), citing *Ford Motor Co. v. Ryan,*[12] 182 F.2d 329, 330 (2d Cir.1950), *cert. denied*, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950), and plaintiff's choice of forum should rarely be disturbed unless the balance is strongly in favor of a defendant. *Morehead v. Barksdale*, 263 F.2d 117 (4th

Cir.1959); *Lykes Brothers S.S. Co. v. Sugarman*, 272 F.2d 679 (2d Cir.1959), *Texas Gulf Sulphur Company v. Ritter*, 371 F.2d 145 (10th Cir.1967), and the factual content of any affidavit in support of the motion is very important, *Ritter, supra*.

Defendants have failed to convince the Court that the convenience of witnesses commands a change of venue in this case. Neither by affidavits or otherwise have they presented names and subject matter of witnesses who will be convenienced by moving this case to the nation's capital. In fact, the only potential witness listed is the manager of the LB program in Washington; the Court has already noted his failure to respond to the affidavit as to his wanderings.

█ Weighing the balance of convenience of the witnesses in this case in light of the fact that it is quality, and not mere quantity that is the governing criterion, *Wright v. American Flyers Airline Corp.*, 263 F.Supp. 865, 867 (D.S.C.1967), the Court is not convinced that the balance favors transfer. In light of the weight to be given a plaintiff's choice of a forum having substantial connection with the parties and the controversy, the Court is convinced that defendants have failed to show that the balance of convenience would make transfer appropriate here. *Chicopee Manufacturing Corp. v. Kendall Co.*, 154 F.Supp. 248 (W.D.S.C.1957).

## FINDINGS AS TO WAIVER

Plaintiff further insists, in resisting a transfer of this case to another jurisdiction, that defendants (the defendant is the United States) have waived their rights to question the forum plaintiff has chosen. We examine the record in the light of Mr. Justice Frankfurter's able opinion in *Neirbo Company v. Bethlehem Shipbuilding Company, Ltd.*, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), where one finds:

---

**12.** "A defendant must do more than show that the transfer will on the whole make the trial more convenient; it must make the trial mark-edly more convenient." (182 F.2d at 332—L. Hand, concurring).

"Section [1391] 'Merely accords to the defendant a personal privilege respecting the venue, or place of suit, which he may assert, or may waive, at his election.' [*Commercial Casualty Insurance Co. v. Consolidated Stone Co.*, 278 U.S. 177, 179, 49 S.Ct. 98, 99, 73 L.Ed. 252, 254.]

"Being a privilege, it may be lost by failure to assert it seasonably, by formal submission in a cause, or submission through conduct." [308 U.S. 168, 60 S.Ct. 155, 84 L.Ed. 170].

This Court has previously denied the motion to change pursued by defendants under 28 U.S.C. § 1406(a), and the temptation to rest the case there, without decision as to the issue of waiver, is strong except for the commanding call of the duty of decision. We examine the record on the question.

This case has been an ongoing and continuing case in which plaintiff has consistently brought suit, or moved the same cause of action, for more than three years. After two and one-half years of litigation in which the question was not raised, it is now asserted as to the latest revival of the litigation. On July 24, 1979, a stipulation was filed and the parties, in agreement, sought and obtained this Court's approval which (1) committed Milliken to file 1975/76 Forms LB; (2) *prevented* the FTC from suing Milliken *in any forum* due to its failure to file 1975/76 Forms LB; (3) committed the FTC to give Milliken notice of intended publication; and (4) put this action into inactive status without prejudice and subject to reactivation by Milliken if and when the FTC gave notice of intended publication. There is nothing in the record to indicate defendants questioned the right to sue and the right to reactivate in this forum. The Court is of the opinion that this comes within the "submission through conduct" prescribed in *Neirbo, supra.*

When Milliken reactivated the suit in 1980, it amended the complaint and set about seeking injunctive relief. Defendants decided to postpone publication, thus putting off the need for immediate relief.

Later the FTC further committed itself to this Court as the appropriate arena for resolution of this dispute when, in November 1980, again without reserving any objection to venue, it sought and received this Court's approval of a stipulation (the "Answer Stipulation") allowing Milliken to amend the complaint, extending FTC's time to answer, and establishing notice procedures for further injunctive proceedings, including the designation of the United States Attorney for the District of South Carolina as the agent to receive notice of Milliken's intention to seek temporary relief in this matter.

One cannot read 28 U.S.C. § 1406(a) and ignore subsection (b) which directs a "timely and sufficient objection to venue." We find authority in *Stackpole Motor Transportation, Inc. v. Malden Spinning and Dyeing Co.*, 263 F.2d 47, 50 (1st Cir.1958), where the Court held that the assertion of lack of venue was too late after a second cross-claim had been filed and months had passed; the Court held that the consideration of the late motion would be "submissive of orderly procedure and make for harmful delay and confusion." Defendants' delay in raising the objection to venue is indefensible and this constitutes waiver of its right to raise this objection. This is not a case in which the defendants received extensions of its time to move or answer and then raised a venue objection at the end of the extension—years have passed since the answer first would have been due. Nor is this a case in which the defendants had grounds to assert a number of the waivable defenses available under Fed.R. Civ.P. 12(b) and so delayed filing an answer or motion to dismiss because of the complexity of a motion including all those defenses. An objection to venue could have been raised in a simple, straightforward set of papers.

It was not until two years after the filing of this action before this Court that the FTC first mentioned, during the negotiation of the Confidentiality Stipulation, that it might have an objection to continuing this litigation.

This Court cannot ignore the Stay Stipulation of July 24, 1979, a full-fledged order

of this Court contains a temporary settlement deactivating the case without prejudice subject to reactivation in this Court, which goes to the merits of this matter: the FTC agreed to forego its right to bring an enforcement proceeding, Milliken agreed to file the 1975/76 LB forms with the FTC, and the parties agreed upon a condition requiring 30 days notification before publication of the LB information. By agreeing not to commence an enforcement proceeding, the FTC itself limited the forum available for the resolution of this dispute. If Milliken had thereafter failed to file a 1975/76 Report, the only method the FTC would have had to deal with that failure would have been to invoke the contempt powers of *this* Court. Boiled down to its essential ingredient, the issue in this case is, and has always been, the publication of the information Milliken is required to submit.

In *Meetings & Expositions, Inc. v. Tandy Corporation,* 490 F.2d 714 (2d Cir.1974), the Second Circuit held the existence of such a stipulation is sufficient evidence of waiver of the privilege to assert an objection to the court's *jurisdiction over the person.*

As the Court stated:

"Indeed, execution of the stipulation rendered the previous controversy academic. A stipulation and agreement of settlement, entitled in the action and "so ordered" by the judge, is quite different from a general appearance. Whether or not the court previously had personal jurisdiction over [the defendant], the stipulation was a consent to the exercise of the court's power to compel compliance."

*Meetings & Expositions, Inc.,* 490 F.2d at 717.

Such stipulations are sufficient to waive an objection to *venue.* In *Marquest Medical Products, Inc. v. EMDE Corporation,* 496 F.Supp. 1242 (D.Colo.1980), the Court found that defendants had waived any objection to venue by waiting ten weeks after service of the complaint to raise their objection (this even though defendants had been granted extensions of time to answer by the Court) and by

"having submitted to an order of this court by their stipulation which restrains them from acting as was requested by [the plaintiff] in its motion for preliminary injunction ... [and having] received affirmative preliminary relief by obtaining injunctions against certain actions by [the plaintiff] in that same order."

*Marquest Mechanical Products, Inc.,* 496 F.Supp. at 1245.

Defendants find themselves in the same position as defendant in *Marquest:* having, more than two years ago, entered into what amounted to at least a preliminary settlement of a matter which was before this Court, having invoked the power of this Court by seeking its approval, and having failed even to attempt to preserve its privilege to object to this arena as the proper forum, has long ago waived its venue objection.

■ Although the FTC's participation in this suit in this district, through the Stay Stipulation, constituted a waiver of its venue objections, the Answer Stipulation, also evinces conduct sufficient to foreclose the FTC from asserting any objection to this district as the appropriate forum.

While a stipulation merely enlarging the time to answer has been held not to constitute a waiver of defendant's right to assert a venue objection at a later date, the Answer Stipulation goes far beyond merely providing the FTC with an extension of time. This action was reactivated by Milliken in this Court in the manner prescribed by the Court in the Stay Stipulation, as a result of the FTC's notice of intended publication in August 1980, and the complaint was amended. At least in part because of Milliken's moves and fully aware of imminent injunctive proceedings in this Court, defendants decided to postpone publication and reconsider plaintiff's position. Hence, the Answer Stipulation in November 1980.

In the Answer Stipulation, the FTC foresaw the likelihood, if it adhered to its earlier decision, of Milliken filing a preliminary injunction motion raising the claims and seeking the relief to which defendants later consented in the Injunction Stipulation.

Defendants foresaw further recourse to this forum as the arena for resolution of this dispute. They foresaw that, when such further relief was sought, time would be of the essence. Its failure to raise or even hint at any venue objection in 1979 and 1980, when there was sufficient time to resolve that preliminary matter, establishes its consent to having the further proceedings which were clearly contemplated as of November, 1980 held in this forum.

This intention is further evinced by that portion of the stipulation which provides: "Nothing in this Stipulation and Order shall preclude Milliken from, at any time, seeking temporary relief, upon the earliest possible telephonic notice, or preliminary injunctive relief, upon written notice, to the Office of the General Counsel of the Commission *and to the United States Attorney for the District of South Carolina.*" (emphasis added).

Many cases hold that the appointment of an agent to receive process in the jurisdiction is evidence of consent to venue. *Neirbo, supra; Leonard v. Wharton,* 268 F.Supp. 715, *appeal denied* 396 F.2d 452 (4th Cir. 1968); *Herpst v. S.B.I. Liquidating Corp.,* 279 F.Supp. 928, 930 (D.C.Pa.1961); *Davis v. Smith,* 253 F.2d 286, 288 (3rd Cir.1958).

Defendants, by stipulation, appointed the District Attorney an agent in this district to receive notice. By so doing, they consented to suit in this forum. *Leonard v. Wharton, supra. See* Wright, Miller, and Cooper, *Federal Practice and Procedure,* § 3829 (1976 ed.) The Answer Stipulation, then, contains evidence of both conduct sufficient to sustain a waiver and consent to venue in this forum by appointment of an agent to receive notice.

Later, in August, 1981, defendants consented to the Injunction Stipulation without a reservation of rights. If the Court has the power to enjoin, it has jurisdiction and venue.

We have discussed how the stipulations waive the venue objections defendants now attempt to assert. The cumulative effect of all three, plus the delay, yields the conclusion that defendants have waited far too long to raise this issue. Defendants objection to the venue question at this point must be rejected. They have both expressly and impliedly consented to the appropriateness of this forum.

## CONCLUSION

Venue is properly found in the District of South Carolina.

In addition, the Court finds that defendants have waived objections by their conduct and arguments in this case.

The motion to change the venue is denied.

AND IT IS SO ORDERED.