The NATIONAL ASSOCIATION OF LIFE UNDERWRITERS, Texas Association of Life Underwriters, John W. French, Sr., Danny H. Fisher, and Ben A. Kowalski, Plaintiffs,

v.

Robert L. CLARKE, Comptroller of the Currency, in his Official Capacity, the Office of the Comptroller of the Currency, the United States of America, NCNB National Bank of North Carolina, NCNB Texas National Bank, NCNB Securities, Inc., Defendants.

AMERICAN COUNCIL OF LIFE INSURANCE, the Variable Annuity Life Insurance Co., Plaintiffs,

v.

Robert L. CLARKE, Comptroller of the Currency, in his Official Capacity, the Office of the Comptroller of the Currency, the United States of America, NCNB National Bank of North Carolina, NCNB Texas National Bank, NCNB Securities, Inc., Defendants.

Civ. A. Nos. A–90–CA–679, A–90–CA–774.

United States District Court, W.D. Texas, Austin Division.

March 25, 1991.

Martin E. Lybecker, David Overlock Stewart, Alan G. Priest, Raymond C. Ortman, Jr., Ropes & Gray, Washington D.C., Roy Q. Minton, Martha Dickey, Minton, Burton, Foster & Collins, Austin, Tex., for American Council of Life Ins. and Variable Annuity Life Ins. Co.

C. Dean Davis, Davis & Davis, P.C., Austin, Tex., Jonathan B. Sallet, Ann M. Keppler, Jenner & Block, Washington, D.C., for John W. French, Sr., Danny H. Fisher, Ben A. Kowalski, Texas Ass'n of Life Underwriters and National Ass'n of Life Underwriters.

Mollie S. Crosby, U.S. Attorney's Office, Austin, Tex., Ted Hirt, Tracey Merritt, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for Robert L. Clarke, Office of the Controller of the Currency and the U.S.

Robert M. Kuruca, Steven Rosenthal, Robert G. Ballen, Morrison & Foerster, Washington, D.C., Dan S. Boyd, Johnson & Gibbs, Dallas, Tex., Janette P. Patterson, Austin, Tex., for NCNB Nat. Bank of North Carolina, NCNB Texas Nat. Bank and NCNB Securities, Inc.

## MEMORANDUM OPINION AND ORDER

WALTER S. SMITH, Jr., District Judge.

The Plaintiffs seek declaratory and injunctive relief from the Comptroller of the Currency's approval of NCNB National Bank of North Carolina's plan to sell annuities through a wholly owned subsidiary, NCNB Securities, Inc. The Defendants have moved to dismiss the Plaintiffs' complaint on the grounds of lack of standing and improper venue and, alternatively, to transfer venue to the District of Columbia.

## I. BACKGROUND

The National Association of Life Underwriters ("NALU") is a national trade association representing approximately 1,000 state and local associations that, in turn, represent approximately 138,000 life and health insurance agents who sell insurance products, including annuities, throughout the United States.

The Texas Association of Life Underwriters ("TALU") is a NALU-member trade association, representing approximately 8,900 life and health insurance agents who sell insurance products, including annuities, in Texas.

John W. French, Sr., Danny H. Fisher, and Ben A. Kowalski (the "individual Plaintiffs") are licensed Texas insurance agents who are members of TALU. All three agents sell annuities and are affiliated with insurance agencies in Texas.

The American Council of Life Insurance ("ACLI") is a non-profit trade association of 616 stock and mutual life insurance companies competing nationwide, and represents its members on a variety of legislative and regulatory issues. ACLI member companies market fixed and variable annuities in all fifty states.

The Variable Annuity Life Insurance Company ("VALIC") is a Texas-based insurance company licensed and doing business in all 50 states and specializing in the underwriting and sale of tax-deferred annuities.

In August, 1989, NCNB National Bank of North Carolina ("NCNB North Carolina") sought approval from the Office of the Comptroller of the Currency ("OCC") to offer various annuity contracts on an agency basis through its wholly-owned subsidiary, NCNB Securities, Inc. ("NSI"). In March, 1990, the Comptroller approved NCNB North Carolina's request, determining that annuities were primarily financial investments and the sale of such services was within the power of national banks to broker financial investment instruments.

In August, 1990, NALU, TALU, and the individual Plaintiffs filed suit pursuant to the Administrative Procedure Act, seeking declaratory and injunctive relief based upon their claim that the Comptroller's decision was arbitrary, capricious, an abuse of discretion, and otherwise in violation of law. Shortly thereafter, ACLI and VALIC

initiated a separate suit against the same Defendants containing similar allegations. The cases were consolidated by this Court on October, 1990.

The Plaintiffs' main contention is that NCNB North Carolina's scheme is in violation of the National Bank Act because it will permit and encourage the unlawful entry of national banks into the insurance business.

The Defendants move to dismiss the Plaintiffs' complaint under Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure on the grounds that the Court lacks jurisdiction with regard to a number of the Plaintiffs and because venue is improper under 28 U.S.C. § 1391(e). Alternatively, the Defendants request that the action be transferred to the District of Columbia under 28 U.S.C. § 1404(a) for the convenience of parties and witnesses and in the interest of justice.

## II. STANDING

A. *The Texas Plaintiffs.* The Defendants assert that the individual Plaintiffs and TALU have no standing to bring this suit because NCNB is selling annuities only in North and South Carolina, and has no future plans to sell annuities in Texas.

A standing argument challenges the subject matter jurisdiction of the Court because Article III of the Constitution confines federal courts "to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright,* 468 U.S. 737, 753, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984). *See also Whitmore v. Arkansas,* — U.S. ——, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990).

> This requirement ensures the presence of the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962).

*Diamond v. Charles,* 476 U.S. 54, 62, 106 S.Ct. 1697, 1703, 90 L.Ed.2d 48 (1986).

 "In essence the question of standing is whether the litigant is entitled to

have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975). The focus of the court is upon the "qualifications and status of the party seeking to bring his complaint before a federal court and not on the issues he wishes to have resolved." *McKinney v. U.S. Dept. of Treasury,* 799 F.2d 1544 (Fed.Cir.1986). The major requirement for an Article III case or controversy is that the plaintiff clearly demonstrate that he has suffered an "injury in fact." *Whitmore v. Arkansas,* 110 S.Ct. at 1723.

> That injury ... must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is "distinct and palpable", as opposed to merely "[a]bstract", and the alleged harm must be actual or imminent, not "conjectural" or "hypothetical". Further, the litigant must satisfy the "causation" and "redressability" prongs of the Art. III minima by showing that the injury "fairly can be traced to the challenged action," and "is likely to be redressed by a favorable decision." The litigant must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements. A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing.

*Id.* (citations omitted).

What is required is that the plaintiff clearly establish an injury in fact "that distinguishes 'a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the problem.'" *Diamond v. Charles,* 476 U.S. at 66–67, 106 S.Ct. at 1706, *quoting United States v. SCRAP,* 412 U.S. 669, 689, n. 14, 93 S.Ct. 2405, 2417, n. 14, 37 L.Ed.2d 254 (1973). The injury must be real or immediate.

> Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be "*'certainly impending'*" to constitute injury in fact.

*Whitmore v. Arkansas,* 110 S.Ct. at 1723 (citations omitted) (emphasis added).

In light of this framework, the Court is persuaded that the individual Plaintiffs have not alleged a " 'sufficient threat of actual injury' " in order to have standing to prosecute this action. *Pennell v. City of San Jose,* 485 U.S. 1, 8, 108 S.Ct. 849, 855, 99 L.Ed.2d 1 (1988), *quoting Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308–09, 60 L.Ed.2d 895 (1979). The affidavits and deposition testimony presented by the parties establish that NCNB North Carolina is selling annuities in North and South Carolina, but that no such sales have occurred in Texas. Additionally, although NCNB recognizes that Texas would be an attractive market, it has no plans to begin selling annuities in Texas, either directly or indirectly through subsidiaries or agents, within the near future. The individual Plaintiffs' allegations of harm are too attenuated to sustain jurisdiction.

■ TALU bases its claims against the Defendants on the threatened injury to its members. Each of the individual Plaintiffs is a member of TALU. An organization may have standing as the representative of its members even in the absence of injury to itself. *International Union, United Auto. v. Brock,* 477 U.S. 274, 280, 106 S.Ct. 2523, 2528, 91 L.Ed.2d 228 (1986). An organization has standing to litigate on behalf of its members when:

> (a) its members would otherwise have standing to sue in their own rights; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Advertising Comm'n.,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Additionally,

> The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit. . . .

*Warth v. Seldin,* 422 U.S. at 511, 95 S.Ct. at 2211–12.

■ In the present case, the individual Plaintiffs have not established the actual injury necessary to bring suit on their own behalf. Nor has TALU established that the threatened injury to its members is of sufficient immediacy to confer standing. Accordingly, it is ORDERED that the Defendants' Motions to Dismiss the individual Plaintiffs and TALU for lack of standing is GRANTED. As this is not a ruling on the merits, the Plaintiffs will be free to relitigate this issue should the NCNB Defendants actually initiate a program to sell annuities in Texas.

■ B. *VALIC.* The Defendants assert that VALIC lacks standing because it is involved in underwriting rather than in selling annuities. The Defendants claim this is insufficient to confer standing upon this Plaintiff because there is no direct competition with NSI, which is engaged solely in the *sale* of annuities.

The declarations and deposition testimony presented by VALIC establish that VALIC distributes its annuity products in all 50 states. This is accomplished through a "captive distribution system," composed of approximately 600 independent contractors who receive benefits from VALIC such as computers and software, referrals of potential customers, and a variety of health and insurance benefits. VALIC's system also includes approximately 17 regional managers, as well as district and unit managers. The independent contractors handle VALIC's products exclusively, and are prohibited by contract from representing other insurance companies or from selling other insurance or noninsurance products. The independent contractors are compensated on a commission basis.

Approximately 97% of VALIC's total sales are from tax-favored annuities products for employees in the not-for-profit sector, including tax-favored annuities products under Sections 403(b), 401 and 457 of the Internal Revenue Code. As of September 30, 1989, only four percent of VALIC's annuity participants were in individual accounts, and only two percent of VALIC's

annuity assets were in non-qualified annuities. During the year 1990, VALIC earned premiums in the state of North Carolina in excess of $23 million. Out of that amount, approximately $1,200,000 came from sales of annuities in nonqualified plans.

VALIC is suing in its individual capacity as an insurance agency, and does not argue that it has organizational standing on behalf of its various representatives.

While the Defendants assert that any competition or injury would be suffered by the individual representatives, VALIC clearly derives a significant profit from the sale of annuities by its representatives. The sale of annuities by NSI would be in direct competition with VALIC and its individual representatives. Although the Defendants assert that VALIC has no information regarding the types of annuities sold by NCNB through NSI, NCNB interestingly does not indicate that it does not deal in the same type of annuities offered by VALIC. In light of the foregoing, the Court is persuaded that VALIC has sufficiently established a palpable injury arising from the activities of the NCNB Defendants in North and South Carolina. The same does not apply to VALIC's claims regarding NCNB's possible expansion into the Texas market. As previously noted, none of the Plaintiffs have established that such a plan is "certainly impending". Accordingly, the Defendants' Motions to Dismiss VALIC for lack of standing are DENIED.

C. *ACLI.* The Defendants contend that ACLI lacks standing to bring suit on behalf of its members because (a) ACLI's members are underwriters and do not sell annuities in competition with NCNB (and therefore suffer no injury in fact); and (b) ACLI is not an adequate representative of its members and therefore cannot bring this action in its representative capacity.

As in the case of VALIC, ACLI has established that its members do in fact sell annuity contracts throughout the United States, including North and South Carolina, and that such sales are in direct competition with NSI. ACLI has, therefore, established that a number of its members will suffer an injury in fact as a result of NSI's sale of annuities.

The Defendants contend, however, that there is a great diversity of opinion among ACLI members as to whether NSI's activities work to their benefit or detriment. Therefore, the Defendants argue, ACLI has failed to meet the third prong of the *Hunt* standard—that the participation of individual members in the lawsuit is unnecessary. If there is no clear consensus among an organization's members, the participation of individual members may be necessary to provide "a proper understanding and resolution" of their claims. *See Harris v. McRae*, 448 U.S. 297, 321, 100 S.Ct. 2671, 2690, 65 L.Ed.2d 784 (1980).

The Defendants have established that NSI has agreements with three ACLI members to sell annuities through NSI, including The Hartford Insurance Company, National Home Life Assurance Company, and North American Life and Casualty Company. The Defendants further establish that nine additional ACLI-member insurance companies have solicited NSI to sell their respective annuities.

"[W]hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought." *Warth v. Seldin*, 422 U.S. at 515, 95 S.Ct. at 2213. In the present case, the Plaintiffs seek a declaratory judgment and an injunction; there is no request for individual damages on behalf of any party. The action "raises a pure question of law"—whether the Office of the Comptroller was correct in allowing NCNB to market annuities. *See International Union, United Auto. v. Brock*, 477 U.S. at 287, 106 S.Ct. at 2531. While there may be a number of ACLI's members who are benefited by the Comptroller's decision, the Court is persuaded that ACLI can litigate this case without the participation of its individual members because "the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* at 288, 106 S.Ct. at 2532, *quoting Warth v. Seldin*, 422 U.S. at 515, 95 S.Ct. at 2213–14. An association is not

robbed of its ability to bring suit on behalf of its members simply because a minority of its members may be benefited by a decision adverse to the association. The ACLI members identified by the Defendants as dealing with NSI represent less than two percent of ACLI's membership. The defendants have, therefore, failed to establish that the interests of ACLI's members are so divergent that ACLI is not entitled to associational standing. *See International Union, United Auto. v. Brock,* 477 U.S. at 290, 106 S.Ct. at 2533. Accordingly, the Defendants' Motions to Dismiss ACLI for lack of standing are DENIED.

D. *NALU.* The initial Motions to Dismiss filed by the Defendants specifically excluded NALU from their standing argument. The NCNB Defendants, however, superfluously noted that NALU's complaint did not sufficiently allege standing. Despite this, the NCNB Defendants did not move to dismiss NALU or request a more definite statement. It was not until the NCNB Defendants' Reply Brief that they requested that NALU be dismissed for lack of standing.

 While the party who initiates a suit in federal court has the burden of establishing that jurisdiction is proper,

[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.

*Warth v. Seldin,* 422 U.S. at 501, 95 S.Ct. at 2206.

 The material allegations of NALU's complaint, taken as true, sufficiently establish standing. The complaint asserts that NALU is a national organization composed of state and local associations that represent life and health insurance agents who sell annuities throughout the United States, and that the approval of NCNB's plan to sell annuities through NSI would be in direct competition with its members.

The NCNB Defendants assert that NALU has presented no factual allegations in support of its claim of jurisdiction. To the contrary, NALU has presented the declaration of William R. Anderson, NALU's Associate General Counsel, which the Court considers legally sufficient to demonstrate NALU's standing. The NCNB Defendants, however, present no evidence to controvert NALU's factual allegations, but rather assert without support that the Anderson declaration is insufficient. The evidence presented is sufficient for the Court to conclude that NALU has standing to prosecute this action. Accordingly, the NCNB Defendants' Motion to Dismiss NALU for lack of standing is DENIED.

### III. IMPROPER VENUE

The Defendants assert that if those Plaintiffs who lack standing are dismissed (the individual Plaintiffs, TALU and VALIC), then venue is improper in the Western District of Texas. The Court, however, has determined that VALIC does have standing. Accordingly, Defendants' arguments of improper venue must rest on different grounds.

The appropriate venue provision, 28 U.S.C. § 1391(e), provides in pertinent part:

A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, or (2) the cause of action arose, or (3) any real property involved in the action is situated, or (4) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.[1]

---

**1.** The recent amendment to § 1391, effective November 28, 1990 in the Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, does not affect the court's determination. The

VALIC asserts that venue in the present action is proper within this district because VALIC is incorporated and maintains an office in the Western District of Texas (Austin), and there is no real property involved. The proper standard for evaluating proper venue for a plaintiff corporation is included in *Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 322 (5th Cir.1977):

> Prior to the Code a corporation was a resident of the state in which it was incorporated; and, more specifically, where the state of incorporation was divided into two or more districts, then in the district where its official residence was designated by the charter or state law and, in the absence of such a designation, then in the district where the corporation maintained [its] home office. The Code has made no change in this rule relative to the residence of a corporate *plaintiff.* For venue purposes it has, however, radically altered the rule relative to a corporate *defendant* (emphasis in original).

The evidence presented establishes that VALIC should properly be considered a resident of the Southern District of Texas. Its principal place of business is in Houston, and it has used its Houston address on official documents filed with the Texas Commissioner of Insurance and the Securities and Exchange Commission.

Venue under § 1391(e) may also be maintained in a judicial district in which "a defendant in the action resides." 28 U.S.C. § 1391(e)(1). The Plaintiffs argue that this language should be interpreted to mean that a suit against a federal official in his official capacity may be brought in any judicial district where any other defendant who happens to be a party resides. The Defendants assert that a proper reading of this section indicates it refers only to the residence of the public official, not to any one of numerous defendants who may be added.

There is a paucity of authority regarding the proper interpretation of this venue provision. The case upon which Plaintiffs rely, *De La Fuente v. ICC,* 451 F.Supp. 867 (N.D.Ill.1978), included no extensive discussion of this issue because the federal officials did not contest venue. *Id.* at 870, n. 2. The Court must, therefore, attempt to discern the intent of Congress.

 The former version of § 1391(e) applied to actions in which *each* defendant was a federal entity. Act of Oct. 5, 1962, Pub.L. No. 87–748, 76 Stat. 744. The statute required that all suits against a federal official be brought in the District of Columbia. A number of courts interpreted the section to prevent a plaintiff from joining non-federal parties as defendants. The statute was amended in part to provide expanded venue provisions in order to ameliorate the rather harsh effects of this rule. *See Stafford v. Briggs,* 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980). The purpose was outlined in the Congressional record:

> As it is now, there is no opportunity for a judicial review of the action of any decision that is made by a Federal officer in charge out there [in the field], no matter how arbitrary or capricious, because it is too expensive to come back here [to Washington, D.C.] to litigate it. Hearings on H.R. 10089 before Subcommittee No. 4 of the House Committee on the Judiciary, 86th Cong., 2d Sess., 19–20 (May 26 and June 2, 1960).

*Id.* at 536, 100 S.Ct. at 781. The result of the amendment has been to permit plaintiffs to bring suit locally against federal officials acting in their individual capacity. *Id.* The purpose was not, however, to rely on non-federal defendants for venue against the government, but to allow a plaintiff "to utilize [§ 1391(e)'s] broad venue and extra-territorial service of process in actions against Federal defendants, despite the presence in the suit of a non-Federal defendant." S.Rep. No. 996, 94th

revised statute now provides for venue "in any judicial district in which (1) a defendant in the action resides, or (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action." *See* Congressional Record H13305 (Oct. 27, 1990).

Cong., 2d Sess. 2 (1976) U.S. Code Cong. & Admin.News 1976, p. 6121. There is no indication in the language of the statute or the legislative history that Congress intended to allow a federal agency or official to be sued in any judicial district in which a non-federal defendant might reside.

The *Stafford* case indicates that the language of § 1391(e) may not be as clear as Plaintiffs assert. The *Stafford* court noted that while the statute expressly refers to the ability of a litigant to bring "*a* civil action" against a federal official, there was nothing in the legislative history to indicate that § 1391(e) permitted a suit for money damages against a federal official sued in his individual capacity. The Court expressly rejected an overbroad interpretation of the statute. *Id.* at 542, 100 S.Ct. at 783–84.

 The interpretation suggested by the Plaintiffs would have the effect of subjecting a federal officer or agency to suit in districts to which it had no connection. Such a result was clearly not intended by Congress. The statute itself appears to provide that the venue determinations for federal and non-federal defendants are separate, even though they may be joined in the same suit. The Court is persuaded, therefore, that venue in this case is not proper in the Western District of Texas.

Even if the Court were to determine that venue was proper, the Court is persuaded that equitable considerations would necessitate a transfer of this action to the District of Columbia. Without the Texas plaintiffs, this action has absolutely no connection with the Western District of Texas beyond the fact that VALIC and NCNB Texas have offices in Austin. The only Texas resident is VALIC, which the Court has determined should properly be considered as incorporated in the Southern District of Texas. NSI sells annuities only in North and South Carolina and has no plans to expand into the Texas market in the near future, if at all.

The judicial district with the most significant ties to this litigation is the District of Columbia. The cause of action arose in Washington, D.C., where the Office of the Comptroller of the Currency made the deci-

sion to approve NCNB's plans. Further, NALU and ACLI are headquartered in Washington, D.C. The connection between the Plaintiffs' claims and this district "is 'minuscule' " and "a transfer pursuant to Section 1404(a) is in order." *Sinko v. St. Louis Music Supply Co.,* 603 F.Supp. 649, 652 (W.D.Tex.1984).

Accordingly, it is ORDERED that this action is hereby transferred to the United States District Court for the District of Columbia pursuant to the provisions of 28 U.S.C. § 1404(a).